[No. 15996. In Bank.—March 24, 1896.]

LORRAINE W. DE LA MONTANYA, Respondent, v. JAMES DE LA MONTANYA, Jr., Appellant.

Divorce—Publication of Summons—Jurisdiction—Alimony—Care and Custody of Absent Children—Vacation of Part of Decree.—Where the defendant in an action for divorce had left the state with the children of the marriage, prior to the commencement of the action, and remained absent therefrom, and the service of summons in the action was by publication only, the jurisdiction of the court is limited to the termination of the marriage *status* of the plaintiff, and it has no jurisdiction to render a decree for alimony or support of the plaintiff, or for the support or custody and control of the children, and any portion of the decree providing therefor should be vacated and set aside upon motion of the defendant.

Id.—Domicile Immaterial to Jurisdiction.—The domicile of the defendant and of the children is immaterial to the jurisdiction, if they were in fact absent from the state, and though their legal domicile may be in the state of California, the court has no power to render a judgment for alimony against the husband, upon publication of summons during his absence from the state; nor has it jurisdiction to appoint a guardian for the children when they are not within the territorial jurisdiction of the court.

ID.—WANT OF JURISDICTION OF PERSON—MOTION TO SET ASIDE JUDGMENT
—AFFIDAVIT OF MERITS—CONSTRUCTION OF·CODE.—A motion will lie to
set aside a judgment rendered without jurisdiction of the person of the
defendant; and section 473 of the Code of Civil Procedure has no appli-
cation to such motion; nor is the defendant required, upon such an
application, to submit himself to the jurisdiction or to show a meritorious
defense.

ID.—APPEAL FROM ORDER REFUSING TO SET ASIDE JUDGMENT.—Although,
as a general rule, an order refusing to vacate a former order is not ap-
pealable, yet this rule does not apply to an appeal from an order made
after judgment refusing to set aside a judgment upon motion, accom-
panied by a showing, which is the only proper mode of presenting the
facts upon which the motion is based, and which would·not appear upon
an appeal from the judgment-roll; and such order is appealable.

APPEAL from an order of the Superior Court of the
City and County of San Francisco refusing to vacate a
judgment.    CHARLES W. SLACK, Judge

The facts are stated in the opinion of the court.

*Dorn & Dorn,* for Appellant.

As appellant and the children at the time the action
was commenced were without the limits of the state,
and ¨as appellant was not personally served with sum-
mons, and did not voluntarily appear in the action, and
the only service was a constructive service, the court
had no jurisdiction to award the custody of the children
to respondent nor to provide for alimony.    (*Pennoyer* v.
*Neff,* 95 U. S. 714; 5 Am. & Eng. Ency. of Law, 751,
752, and cases cited, 753, 762; *Gould* v. *Crow,* 57 Mo.
200; *Garner* v. *Garner,* 56 Md. 127; *Kline* v. *Kline,* 57
Iowa, 386; 42 Am. Rep. 49; Brown on Jurisdiction, secs.
6, 9, 78, 79; Cooley's Constitutional Limitations, 403–06;
Freeman on Judgments, secs. 570, 584, 585; *Amsbaugh*
v. *Exchange Bank,* 33 Kan. 100; *Mastin* v. *Gray,* 19 Kan.
458; 27 Am. Rep. 149; American Leading Cases, 5th ed.,
654, 655; *Bowler* v. *Huston,* 30 Gratt. 266; 32 Am. Rep.
673; *Sichler* v. *Look,* 93 Cal. 600; *McKinley* v. *Tuttle,* 42
Cal. 577; *County of Yolo* v. *Knight,* 70 Cal. 436; *Lyons*
v. *Roach,* 84 Cal. 30; Works on Jurisdiction, 506, 507.)
The place to which a person has removed with intent to
remain there for an indefinite time, and as a place of

present domicile, is the place of his domicile, although he may entertain a floating intention to return at some future period. (*Cockerell* v. *Cockerell*, 25 L. J. Ch. 730; *Stratton* v. *Brigham*, 2 Sneed, 420; *Johnson* v. *Smith*, 43 Mo. 499; *Harris* v. *Firth*, 4 Cranch C. C. 710; *Hallett* v. *Bassett*, 100 Mass. 167; *Ringgold* v. *Barley*, 5 Md. 186; 59 Am. Dec. 107; *Attorney General* v. *Pottinger*, 30 L. J. Ex. 284; *Mitchell* v. *United States*, 21 Wall. 350; *Merrill* v. *Morrissett*, 76 Ala. 433, and cases cited; Jacobs on Domicile, secs. 134, 144, 148; *Young* v. *Pollak*, 85 Ala. 439; *Greene* v. *Inhabitants of Windham*, 13 Me. 225; *Eck* v. *Hoffman*, 55 Cal. 502.) The court acted without jurisdiction and the judgment is void, because founded upon an insufficient affidavit for publication of summons. (*Forbes* v. *Hyde*, 31 Cal. 347–55; Code Civ. Proc., sec. 412; *Ricketson* v. *Richardson*, 26 Cal. 154; *Braly* v. *Seamen*, 30 Cal. 618; *County of Yolo* v. *Knight, supra*.) A motion to set aside a judgment is a proper method of attacking it when it is void for want of jurisdiction of the person, or for an insufficient affidavit of publication. (*Sharp* v. *Daugney*, 33 Cal. 515; *People* v. *Mullan*, 65 Cal. 396; *Reinhart* v. *Lugo*, 86 Cal. 400; 21 Am. St. Rep. 52; *Norton* v. *Atchison etc. R. R. Co.*, 97 Cal. 388; 33 Am. St. Rep. 198; *People* v. *Temple*, 103 Cal. 447; *People* v. *Greene*, 74 Cal. 400; 5 Am. St. Rep. 448; Works on Jurisdiction, 119, 144.) The motion to vacate the judgment does not fall under section 473 of the Code of Civil Procedure, as a motion made under that section admits jurisdiction, while in the case at bar jurisdiction is not admitted, and the order denying the motion is appealable, being made after judgment. (*Norton* v. *Atchison etc. R. R. Co., supra; People* v. *Thomas*, 101 Cal. 572; *People* v. *Blake*, 84 Cal. 611; *County of Sacramento* v. *Central Pac. R. R. Co.*, 61 Cal. 251; *Malone* v. *Big Flat etc. Co.*, 93 Cal. 391; *McCourtney* v. *Fortune*, 42 Cal. 387; *Bailey* v. *Sloan*, 65 Cal. 388; *Jenness* v. *Bowen*, 77 Cal. 310; *McCormick* v. *Belvin*, 96 Cal. 183; *Hallock* v. *Jaudin*, 34 Cal. 172; *People* v. *Mullan, supra; People* v. *Greene*,

*supra; Fairbanks* v. *Lampkin,* 99 Cal. 429; *People* v. *Temple, supra;* Code Civ. Proc., sec. 963.)

*Garber, Boalt & Bishop,* for Respondent.

The judgment is valid notwithstanding the absence of appellant and the children from the state, although based upon constructive service and even if deemed *in personam,* the defendant being domiciled in the state. (2 Black on Judgments, sec. 908; 2 Freeman on Judgments, sec. 570; Cooley's Constitutional Law, Nos. 403, 404; Sedgwick on Statutory and Constitutional Law, 2d ed., 476, Pomeroy's note; *Flint River etc. Co.* v. *Foster,* 5 Ga. 194; 48 Am. Dec. 272, et seq., and note citing many cases; *Beard* v. *Beard,* 21 Ind. 321; *Burnam* v. *Commonwealth,* 1 Duval, 210; *Biesenthall* v. *Williams,* 1 Duval, 329; 85 Am. Dec. 629; *Cassidy* v. *Leitch,* 2 Abb. N. C. 315; *Huntley* v. *Baker,* 33 Hun, 578; *Matter of Empire City Bank,* 18 N. Y. 200, 215; *In re Newman,* 75 Cal. 214; 7 Am. St. Rep. 146; *Grover etc. Co.* v. *Radcliffe,* 137 U. S. 287, 297; *People* v. *Allen,* 40 Hun, 611–15, 621.) The defendant was domiciled in California when this action was commenced, as his removal to another country merely for temporary purposes, *sine animo manendi,* but with a view to returning to his former place of abode, works no change of his legal domicile. (Jacobs on Domicile, secs. 114, 115, 124, 151, 173, 181, 195, 286, 362, 449, 451, et seq; Story on Conflict of Laws, secs. 41, 44, 46; Amos on Jurisprudence, 1st Eng. ed , 377; 2 Bishop on Marriage and Divorce, ed. 1891, sec. 102, et seq, sec. 105; Wharton on Conflict of Laws, sec. 228; Foote on Private International Law, 22, 31, 43; 1 Burge on Colonial and Foreign Laws, 40; 2 Black on Judgments, sec. 929; *State* v. *Fleak,* 54 Iowa, 429; *Neff* v. *Beauchamp,* 74 Iowa, 92, 94; *Shannon* v. *Shannon,* 4 Allen, 134, 136; *Leith* v. *Leith,* 39 N. H. 20; *Hood* v. *State,* 56 Ind. 263; 26 Am. Rep. 21; *Hoffman* v. *Hoffman,* 46 N. Y. 30; 7 Am. Rep. 299; *People* v. *Baker,* 76 N. Y. 78; 32 Am. Rep. 274; *O'Dea* v. *O'Dea,* 101 N. Y. 23;

*Colburn* v. *Colburn*, 70 Mich. 647; *Still* v. *Woodville*, 38 Miss. 646; *Tayler* v. *Jeter*, 33 Ga. 195, 201; 81 Am. Dec. 202; *Von Hoffman* v. *Ward*, 4 Redf. 244; *Lord* v. *Colvin*, 4 Drew. 366, 422; *Pitt* v. *Pitt*, 4 Macf. 627; Civ. Code, secs. 195, 213; *Teel* v. *Yost*, 128 N. Y. 396; *Sewall* v. *Sewall*, 122 Mass. 162; 23 Am. Rep. 299.) The motion is not maintainable because not made under section 473 of the Code of Civil Procedure, and the judgment is not void on its face as to matters in question. (*People* v. *Greene*, 74 Cal. 400; 5 Am. St. Rep. 448; *Moore* v. *Superior Court*, 86 Cal. 495; *Jacks* v. *Baldez*, 97 Cal. 91; *In re Newman, supra; People* v. *Temple*, 103 Cal. 447.) An appeal will not lie from an order refusing to vacate a judgment or order which is itself appealable. (*Henly* v. *Hastings*, 3 Cal. 341, 342; *Eureka etc. R. R. Co.* v. *McGrath*, 74 Cal. 49; *Kubli* v. *Hawkett*, 89 Cal. 638, 640; *Harper* v. *Hildreth*, 99 Cal. 265; *Sutton* v. *Symons*, 100 Cal. 576, 577, and cases there cited; *Swain* v. *Burnette*, 89 Cal. 564, 571; *Howard* v. *Galloway*, 60 Cal. 10; *Sharp* v. *Daugney*, 33 Cal. 505; *Sichler* v. *Look*, 93 Cal. 600, 606.) The judgment is *in rem* as to the custody of the children and alimony, and valid, though based upon constructive service only. (*Pennoyer* v. *Neff*, 95 U. S. 714; *La Fetra* v. *Gleason*, 101 Cal. 246; *In re Newman, supra;* 2 Bishop on Marriage and Divorce, ed. 1891, secs. 69; 1189; *Wakefield* v. *Ives*, 35 Iowa, 238; *Brenot* v. *Brenot*, 102 Cal. 294, 296; *Cox* v. *Cox*, 19 Ohio St. 502, 512; 2 Am. Rep. 415.) The affidavit for publication of notice was not defective in repeating the language of the statute, as the words repeated embody statements proper to be made in an affidavit. (*Ligare* v. *California etc. R. R. Co.*, 76 Cal. 610, 611; Code Civ. Proc., sec. 446; *Anderson* v. *Goff*, 72 Cal. 65, 68; 1 Am. St. Rep. 34.)

Temple, J.—This is an action to obtain a divorce, in which the plaintiff also asked for the exclusive custody and control of two children, the issue of the marriage, and also for permanent alimony, as well as for a suitable allowance to enable her to prosecute this action.

The defendant and the children, who were, of course, infants, were absent from the state when the suit was commenced, and have ever since remained absent. No personal service of the summons was had on the defendant, and he did not appear in the action. An attempt was made to serve the summons by publication.

It is claimed that the service was void because not made as required by the laws of this state, but I shall assume that such attempt at a constructive service was in accordance with the statute in every respect.

The defendant was born, and during his whole life had lived, in this state. He left the state on the twentieth day of November, 1893, with two children of plaintiff and defendant, proceeding to New York, and on the ninth day of December, 1893, left New York for Paris, France, where he arrived with his children on the nineteenth day of December. January 4, 1894, he made application to the ministry of justice of France for express permission to be domiciled in France. Such permission was granted on the fourteenth day of July, 1894. Since December 19, 1893, defendant has resided in France with his children, and neither he or either of the children have since been within this state.

This suit was commenced two days after the departure of the defendant from the state, and it is claimed that defendant left the state and took the children for the express purpose of evading the jurisdiction of the courts of this state.

As stated, the defendant did not appear in said action, and the publication of summons having been made, in due time the default of the defendant was entered, and the court proceeded to hear the cause, and on the sixteenth day of May, 1894, judgment was rendered against defendant, wherein it was adjudged:

1. That the marriage be dissolved; 2. That the exclusive custody, care, and control, and education of the children be awarded to plaintiff; and 3. That plaintiff "shall have the right, at such time in the future as she shall be advised, to apply to the court for such suitable

allowance and sum to be paid her by said defendant for her support during her life, and such further sums as may be necessary in order to enable her to make proper compensation to her attorneys and counsel in said action, and to enforce this decree and judgment."

On the seventh day of September, 1894, on due notice, the defendant moved the court for an order: 1. Vacating the judgment in so far as the same relates to alimony, or any provision for the support of plaintiff or for the support of the children of plaintiff and defendant; 2. Vacating the judgment so far as it relates to the care, custody, and control of the children; 3. Vacating the judgment so far as it relates to alimony or allowance for the support of plaintiff or the children, and for an order striking out from the judgment all the provisions relating to or providing for alimony or support for the plaintiff, or the minor children of plaintiff and defendant, or awarding or providing for the custody, care, or control of the said two minor children.

The motion was based upon the claim that the court had no jurisdiction over the subject matter of this action in so far as it relates to the matters, subjects, and things hereinbefore specified, and had no jurisdiction, or power or authority to make any order or judgment in relation to the subject matters and things aforesaid, and had no jurisdiction over the person of the defendant sufficient to enable, authorize, or empower it to make any order, judgment, or provision, in relation to said subject matters and things, and that said defendant was, at the time of the commencement of this action, and ever since has been, and now is, without the jurisdiction of the said court and without the territorial limits of the state of California, and has never been served with process herein personally, and no service of process has been had herein to enable the court to make any order, judgment, or provision in regard to the subjects, matters and things aforesaid, and that said infant children of plaintiff and defendant were not at the time of the commencement of

this action, and never since have been, and are not now, within the state of California.

In support of the motion various affidavits were read, showing the above facts and others.

Appellant here bases his claim for reversal upon three grounds: 1. That the proof of publication shows that constructive service has never been had according to the statutes of this state, and that, therefore, the judgment is wholly void; 2. The defendant and children were at the time of the attempted service of summons, domiciled in France, and, therefore, the court had no jurisdiction to award the custody of the children to plaintiff, or to provide for alimony; and 3. That the mere fact that the defendant and children were without the territorial limits of California when the action was commenced deprives the court of jurisdiction, even admitting that defendant and the children are domiciled in California, and the constructive service of summons was in all respects regular.

Respondent admits the facts in regard to the departure of defendant from the state with the children, but claims that as matter of law and fact it appears that the domicile of the defendant and children is, and has always been, in California, and she contends that such being the case, the court acquired jurisdiction, not only to grant the divorce to her, but to enter a judgment *in personam* against the defendant, valid at least in California. She also contends that the judgment awarding to plaintiff the custody of the children is *in rem;* that it is valid because it is a mere incident to the divorce, and that upon a dissolution of the marriage it was necessary to provide for the children. Furthermore, she insists that there is no judgment for alimony or for an allowance of any kind.

Conceding that the defendant and the children are all domiciled in California, although in fact absent from the state at the time of the commencement of the action and since, and that the constructive service of summons

was sufficient to give the court jurisdiction to grant the divorce, did the court have the power to award to plaintiff the exclusive custody of the children, and to allow alimony? I have concluded that it had no such power.

Some cases are cited which seem to hold that a personal judgment obtained by constructive service of the summons is valid within the state, although the defendant may have been in fact absent from the state at the time of such service. As to most of these cases it may be said that such statements are entirely *obiter*, the question before the court being as to the extraterritorial effect of such judgment. In such cases the argument is, in general, that, conceding the validity of the judgment within the state where rendered, another state will not recognize its validity, because it will not permit the process of another state to be served within its territory so as to compel one resident there, or in fact being there, to answer a writ issued by the courts of such foreign state. It is a sort of an invasion of a state to serve a foreign writ there at all. The logic would require the courts to go farther and hold that such judgment is wholly void.

Constructive service upon a party who is within the state does not raise the question. The question there is simply whether a defendant had such reasonable opportunity to be heard as will constitute due process.

The leading case upon subjects of this character is *Pennoyer* v. *Neff*, 95 U. S. 714. Counsel for respondent contends that it is not there held that jurisdiction to enter a personal judgment cannot be obtained over one domiciled in the state by constructive service, when such defendant is absent from the state at the time of the attempted service; but only that such service is not good against a defendant who is not only without the state, but is actually domiciled elsewhere. Domicile has never, so far as I am aware, been made the test of jurisdiction to render a personal judgment. The question there is always whether there has been due process; whether the defendant has had a reasonable opportu-

nity to be heard? Substituted service may be valid upon those within the state when the same service would be void as to those without the state. As to those within the state the question would be whether it has afforded a defendant a reasonable opportunity to be heard. But the process cannot go beyond the state and compel any person in another state to resort to the state where the action is pending, there to make his defense. No service will be recognized made *there*, whether actual or constructive. It is as much an invasion of a foreign jurisdiction to serve a citizen of the state in which the action was brought temporarily resident there, as it would be to summon from its borders a citizen of such foreign state. If such things could be done, who would determine where the domicile of a particular person really was? Domicile often depends upon secret intention. It would be a most unsatisfactory test.

I am aware that it is often said by courts and law writers that domicile is the test of jurisdiction in divorce. This doctrine was built up mainly, if not entirely, to prevent parties really residing in a state from going to another for the purpose of getting a divorce. So far its effect has been beneficent, but it is obvious after all that what in these cases is called domicile is not domicile. As between states it would be no test at all unless it is domicile as defined in international law. To concede that each state may give a different definition, or to speak of domicile for the purposes of divorce, as is often done, is to concede that the test is not domicile. These writers and the courts say the test is "actual *bona fide domicile.*" Since every person always has a domicile, and can have but one, how does *actual and bona fide domicile* differ from domicile?

It is meant, I presume, that domicile and actual residence must coincide. Where, then, is the jurisdiction in those cases where they do not? One may be domiciled in California who never was within the state and never had thought of going there. Or he may be domiciled therein years after he has left without the inten-

tion of returning. Persons have in California exercised for years all the rights of citizens and even held high office, who, according to Phillimore, Jacobs, Dicy and other writers on the law of domicile, never had a domicile here, because they at all times had a fixed and definite intention of returning to their domicile of origin. Had the wife of such a person obtained a divorce while he was here exercising the rights of a citizen of the state, would the courts of any state declare such a decree void upon proof of the existence of such intention? If not, then domicile is not the test of jurisdiction even as to the *status* of the litigants, and certainly not in personal actions.

Jurisdiction is derived from the constitution and laws creating the court, and I know of no limitation in the constitution of the United States upon the power of a state to give to its courts jurisdiction over all persons found within its borders. Certainly it has not imposed any such limitation as the test of domicile.

Domicile is the test of personal rights in regard to inheritance, but, unless made so by local law, is not important as affecting the relation of the individual to the government. The relation of the individual to the government depends upon actual presence within the territorial limits of a country, and upon citizenship or allegiance.

But I cannot understand *Pennoyer* v. *Neff, supra,* as counsel do. It is true that in the case in which the judgment there under consideration was rendered the defendant was said to have been a nonresident, and, presumably, was domiciled abroad, but that circumstance seems to have been treated as one immaterial in the discussion.

The judgment there was personal, and jurisdiction was obtained, if at all, by constructive service of summons. I use the term "constructive service" for convenience, although it does not constitute service at all when the defendant is without the state. No property had been attached. The conclusion is based upon a

proposition of international law laid down at the outset. "No state can exercise direct jurisdiction and authority over persons or property without its territory. (Story on Conflict of Laws, c. 2; Wheaton on International Law, pt. 2, c. 2.) The several states are of equal dignity and authority, and the independence of one implies the exclusion of power from all others. And so it is laid down by jurists, as an elementary principle, that the laws of one state have no operation outside of its territory, except so far as is allowed by comity; and that no tribunal established by it can extend its process beyond that territory so as to subject persons or property to its decisions."

The idea seems to be that the state has no jurisdiction over either persons or property not within its territory, and that to allow it to summon one from another state is an encroachment upon the independence of such state.

The judge then cites the case of *Cooper* v. *Reynolds*, 10 Wall. 308. In that case Justice Miller was considering a judgment obtained by W. G. Brownlow against Reynolds and others for false imprisonment. Brownlow made affidavit to the effect that the defendants had fled from the state, or so absconded or concealed themselves that the ordinary process of law could not reach them. Thereupon, under the statutes of Tennessee, the plaintiff caused an attachment to be issued and due publication to be made. Default was entered, and a judgment, personal in form, against defendants. The land attached was sold, and the case before the court was ejectment, brought by the original owner against the purchaser under the judgment who had taken possession. The question was as to the validity and effect of the judgment.

The court proceeded to state that the proceeding, in case the defendant did not appear, was strictly *in rem;* that if he appeared it then became *in personam.* It was there said: "That such is the nature of this proceeding in this latter class of cases is clearly evinced b

two well-established propositions: 1. The judgment of the court, though in form a personal judgment against the defendant, has no effect beyond the property attached in the suit. No general execution can be issued for any balance unpaid after the attached property is exhausted. No suit can be maintained on such a judgment in the same court, or in any other, nor can it be used as evidence in any other proceeding not affecting the attached property, nor could the costs in that proceeding be collected of defendant out of any other property than that attached in the suit."

After making a quotation, which includes the above, Judge Field proceeds: "The fact that the defendants in that case had fled from the state, or had concealed themselves so as not to be reached by the ordinary process of the court, and were nonresidents, was not made a point in the decision. The opinion treated them as being without the territorial jurisdiction of the court; and the grounds of the extent of its authority over persons and property thus situated were considered, when they were not brought within its jurisdiction by personal service or voluntary appearance." The judge then proceeds to add that, to the doctrine stated in the citation, all the judges of the court agree.

I understand this to be a deliberate statement to the effect that domicile and residence, or both, are immaterial; as indeed they must be, if, as appears all through the opinion, the basis of the doctrine is, that process cannot run beyond the limits of the state. I might make further quotations from this opinion, but it is too familiar to the profession to require it. An impartial consideration of the opinion will, I think, convince any one that it holds that process cannot be served upon any one without the state, and the same doctrine is announced in *Galpin* v. *Page*, 18 Wall. 350, where it is said: "Whenever, therefore, it appears from the inspection of the record of a court of general jurisdiction that the defendant, against whom a personal judgment or decree is rendered, was, at the time of the alleged ser-

vice, without the territorial limits of the court, and thus beyond the reach of its process, that he never appeared in the action, the presumption of jurisdiction over his person ceases." From this, and other like expressions in other cases, it is manifest that domicile, or even residence, in a state, cuts no figure at all.

The idea that domicile determines jurisdiction in divorce rests upon the assumption that *status* depends upon domicile, and is of interest there only. Judge Field could not have had this in mind in *Pennoyer* v. *Neff, supra,* and therefore when he speaks of "absent defendants" he cannot mean those not domiciled within the state, but must have meant simply those physically absent, and upon whom, therefore, personal service of process could not be made.

But it is claimed that the doctrine of *Pennoyer* v. *Neff, supra,* was explained in *Grover etc. Co.* v. *Radcliffe,* 137 U. S. 287, in accordance with the views of respondent. I cannot find anything in that case upon the subject. The judgment there under consideration was a judgment by confession entered by a prothonotary in a court of Pennsylvania, in pursuance, as it was claimed, of a bond and warrant of attorney executed by John Benge, who was then a resident and citizen of Maryland. The warrant of attorney authorized any attorney of any court of record to confess judgment against him. The statute of Pennsylvania authorized the prothonotary of any court of record in the state to enter judgment upon such an instrument.

An attempt was made to execute this judgment in Maryland. It was claimed that the judgment was void, not being entered in pursuance of the power, and that defendant not having been served with process, and not having appeared, the judgment was without jurisdiction and void.

The numerous cases cited by the chief justice were used to show that such a judgment would be held invalid without the state where rendered, and not to show that it should be held valid within the state, and I think the

question whether such a judgment would be valid within the state where rendered was not before the court in any of the cited cases. But, in discussing the question as to whether the judgment would be valid in another state, it was assumed that it might be valid within the state where rendered.

That was the very question in *Pennoyer* v. *Neff, supra.* A personal judgment upon constructive service had been rendered against a nonresident, and property in Oregon sold under execution to satisfy it. The question was as to the validity of the judgment within the state where rendered.

It is contended also by the respondent that the decree is valid as to children and alimony, although the service was constructive, and the court could not render a personal judgment because these are incidents to the divorce. Conceding that they are incidents to the cause of action for a divorce, the result would not follow. In proceedings *in rem* where there is no jurisdiction of the person, no such result has ever been recognized.

In *Cooper* v. *Reynolds, supra,* it was said that costs cannot be recovered from any other property of the defendant. There is in reality no defendant save the *res.* So here it cannot properly be said there was a defendant. In the proceeding the court had before it only the *status* of the plaintiff. The summons was not really a writ to bring the defendant into court, but merely a notice prescribed by the statute in the interests of fairness, and to rebut the idea that the proceeding was secret. (2 Bishop on Marriage and Divorce, sec. 159.) It brought the *res* into court, and not the defendant. The adjudication must be confined to that *status.* It is said that the relation of the parents to the children, and their relation to each other in regard to the children, is a *status.* If so, it would not help the respondent, for no such *status* was before the court. But the very meaning of the word "*status,*" both derivative and as defined in legal proceedings, forbids that it should be applied to a mere relation. *Status* implies relations undoubtedly,

but it is not a mere relation.   But the authorities are all one way on this subject.

If the children are within the jurisdiction, and the defendant is personally served with summons, and perhaps if he is not, the court may award the custody of the children to one of them.   It is a mode of appointing a guardian, which is always a matter of local control, regardless of the legal domicile of the children, if domicile and residence do not coincide.   It seems to have been held that, when the defendant appears and makes issue upon the point, the court may determine that one spouse is a suitable person to have the custody and control of the children, and that the other is not.   (*People* v. *Allen*, 40 Hun, 611.)   An appeal was taken from the order made in that case, which was a proceeding in *habeas corpus* to the court of appeals.   There the appeal was discharged, because it appeared that the lower court, " in view of all the existing facts relating to the welfare and interests of the infants, exercised its discretion in awarding to the mother the custody of the children, and in so doing it gave to the Illinois decree not the force of an estoppel, or the conclusive effect sometimes due to a judgment, but simply regarded it as a fact or circumstance bearing upon the discretion to be exercised without dictating or controlling it."   This seems to hold that without the state such a finding would have no binding force.

But where, as in this case, no personal judgment could be entered, there can be no question.   (Van Fleet on Collateral Attack, secs. 389, 391, and authorities cited.)

And Judge Cooley, in his Constitutional Limitations, 6th edition, page 499, says: "The publication which is permitted by the statute is sufficient to justify a decree in these cases changing the *status* of the complaining party, and thereby terminating the marriage; and it might be sufficient also to empower the court to pass upon the question of the custody and control of the children of the marriage, if they were then within its

jurisdiction. But a decree on this subject would only be absolutely binding on the parties while the children remained within the jurisdiction; if they acquire a domicile in another state or country, the judicial tribunals of that state or country would have authority to determine the question of their guardianship there.

"But, in divorce cases, no more than in any other, can the court make a decree for the payment of money by a defendant not served with process, and not appearing in the case, which shall be binding upon him personally. It must follow, in such a case, that the wife, when complainant, cannot obtain a valid decree for alimony, nor a valid judgment for costs. . . . . The remedy of the complainant must generally, in these cases, be confined to a dissolution of the marriage, with the incident benefits springing therefrom, and to an order for the custody of the children, if within the state." (See, also, Freeman on Judgments, secs. 584, 585; Brown on Jurisdiction, secs. 6, 8, 78, 79.)

The doctrine is very clearly stated in *Woodworth* v. *Spring*, 4 Allen, 321: "Every sovereignty exercises the right of determining the *status* or condition of persons found within its jurisdiction. The laws of a foreign state cannot be permitted to intervene to affect the personal rights or privileges even of their own citizens, while they are residing on the territory, and within the jurisdiction of an independent government."

Respondent contends that there is no judgment for alimony; if so, it is not apparent how plaintiff would be injured by striking from the decree the clause complained of. I think the decree, if valid, settles the right of plaintiff to alimony for her support during life, and, as the court had no jurisdiction to provide for alimony, that part of the decree should be stricken out.

Respondent contends that a motion to vacate the judgment in this case could only be maintained under section 473 of the Code of Civil Procedure. The point of the contention, as I understand it, is, that defendant should come in and submit himself to the jurisdiction

of the court, show a meritorious defense, and ask leave to have his defense considered. It is obvious, of course, that defendant cannot do this, for he cannot show that the judgment was taken against him by his inadvertence, mistake, or excusable neglect. The argument, therefore, is, that no such motion will lie. No authority for such a proposition is cited, unless *Jacks* v. *Baldez,* 97 Cal. 91, may be claimed to have that effect. In that case, however, the motion was to vacate a judgment rendered because a demurrer was sustained to a complaint, and the plaintiff failed to amend within the time allowed. The motion was made eleven months after the entry of judgment. Plaintiff was not notified, as the code requires, of the order sustaining the demurrer.

If this case is not put upon the ground that the failure to give the notice was not jurisdictional, I think it was overruled by *Norton* v. *Atchison etc. Co.,* 97 Cal. 388; 33 Am. St. Rep. 198. It was, however, but a default, and the parties were in court. A plaintiff who for six months should fail to know what had become of a demurrer which had been submitted for decision would be guilty of great negligence. The remedy offered by section 473 was ample. The case of *Norton* v. *Atchison etc. Co., supra,* seems in point here.

It is also claimed that no appeal lies to this court from an order refusing to set aside the judgment because the judgment was appealable. To this proposition many decisions of this court are cited. I do not care to review these cases. No doubt it has been held, and I think correctly, that when a motion is made to vacate an order under such circumstances that it merely calls upon the court to repeat or overrule the former ruling on the same facts, the last order is not appealable, not because the last order is not within the terms of section 963 of the code allowing appeals, for it may be; but because it would be virtually allowing two appeals from the same ruling, and would, in some cases, have the effect of extending the time for appealing contrary to the intent

of the statute. Nor will such practice be allowed merely to permit a litigant to take an exception, or get a bill of exceptions, which he has neglected to do at the proper time. But I see no reason why this appeal should not be entertained. It is plainly within the terms of the statute allowing appeals, and no other method is suggested in which the right of the appellant to the relief sought could be considered here. An appeal upon the judgment-roll would not present all the facts upon which the motion is based—even if one may have a bill of exceptions when he has not been in court, and has taken no exceptions. Besides, it is a case in which it was eminently proper, if not necessary, that relief should first be asked from the trial court. Its action could not have been asked in any other mode. The defendant was not in court, and had no opportunity to be heard.

The order is reversed, and the cause remanded with directions to the court to grant appellant's motion.

Harrison, J., Garoutte, J., and Henshaw, J., concurred.

McFarland, J., dissenting.—I dissent. This is an action of divorce; and the present appeal is by defendant from an order of the superior court denying his motion to strike from the judgment rendered in favor of plaintiff all the provisions thereof relating to the custody of the minor children of the parties, and to support by way of alimony.

The facts of the case are these: The respondent and appellant were both born in, and are citizens of, the state of California; they were married, and their children were born in this state; and they have been continuously domiciled and resident here. The parties have two children, a girl named Lorraine, about five years old at the commencement of this action, and a boy named James Francis, about two years old at that time. This action was commenced December 20, 1893. About three weeks before that time appellant by force

and fraud took the child, James Francis, away from respondent; and on the following day took and carried away both of said children, and kept them secreted from respondent, and has never since let her see them; and a short time before the commencement of this action he clandestinely left the state of California, and took said children with him; and about November 27, 1893, he clandestinely left the United States, taking said children with him, and since then has temporarily sojourned in the city of Paris, in France.   In January, 1894, be made application to the proper authorities of France for permission to be domiciled there; and it is admitted by respondent that he obtained such permission in July, 1894; but it appears by the preponderance of evidence that he claimed his legal residence and domicile to be in the city of San Francisco, California; that " his purpose in applying for permission to fix his domicile in France was to prevent his wife from serving summons on him in an action for divorce which she had commenced, and also to keep her from getting possession of their children"; that his sojourning in France was only temporary, for the purposes above mentioned; and that his intention was and is to return to California, where all his interests are, as soon as these purposes shall be subserved.   Service of summons was duly made upon him by publication, and sending him a copy of complaint and summons to Paris, France, in accordance with the provisions of the statute of California on that subject; and default having been regularly entered against. him, judgment, after the introduction of evidence, was duly entered in favor of respondent.   By said judgment: 1. A divorce was granted respondent upon the grounds of the adultery and extreme cruelty of appellant; 2. The custody of the said two children was given to respondent; and 3. It was further ordered that respondent shall have the right, at such time in the future as she shall be advised, *to apply to the court* for suitable allowance and sum to be paid to her by said defendant for her support during life," etc., as she may

be entitled to under her complaint.  The motion made by appellant, from the refusal of which this appeal is taken, was to strike out the said second and third parts of said judgment, upon the ground that the said service of summons did not give the court jurisdiction over the matters embraced in those parts of the judgment.

Waiving the objection of respondent, that said motion was not a proper remedy under our system of practice, it is apparent that the motion could be granted only upon the theory that the judgment, so far as it embraces the parts sought to be stricken out, is *void—absolutely* void—void *in the state where it was rendered.*  And a court should certainly not judicially declare such utter inefficiency of a sovereign state to deal with the property and personal rights of its own citizens, unless it be driven to such declaration by the force of inevitable judicial authority.  I do not think that there is such authority.

The case chiefly relied on is *Pennoyer* v. *Neff*, 95 U. S. 714, which is declared by counsel for appellant, and by others, to have established what is called the *modern* doctrine in regard to the jurisdiction of state courts over persons not personally served with process within the state.  A close examination of that case shows, however, that the main proposition decided by it—which may, perhaps, be styled "modern"—is that a judgment *in personam* rendered in a state court against a nonresident upon substituted service cannot be enforced even in the state where it was rendered, or satisfied even out of property situated within the state where it was rendered; while, before that, the weight of authority was that, although the courts of *another* state would not recognize such a judgment, it was valid in the state where it was rendered, and could be satisfied out of property of the defendant situated within that state.  This is evidently the view of that case taken by Mr. Freeman; for in his work on Judgments, section 567, he says: "Until a comparatively recent date the opinion extensively pre-

vailed that judgments *in personam* entered after constructive service of process upon a nonresident, while they were not enforceable beyond the limits of the state where entered, were nevertheless so far valid in that state.   This opinion has been *overthrown* by the supreme court of the United States in the case of *Pennoyer* v. *Neff, supra.*"   Many of the authorities which show that such was the former doctrine may be found in the cases cited in the briefs, and in the opinion of the court in *Weaver* v. *Boggs,* 38 Md. 255.   In that case the court states the rule in this language: "It is well settled that a judgment obtained in a court of one state cannot be enforced in the courts and against a citizen of another, unless the court rendering the judgment has acquired jurisdiction over the defendant by actual service of process upon him, or by his voluntary appearance to the suit and submission to that jurisdiction.   Such a judgment may be perfectly valid in the jurisdiction where rendered, and enforced there even against the property, assets, and credits of a nonresident defendant there situated, but it cannot be enforced or made the foundation of an action in another state.   A law which substitutes constructive for actual service *is binding upon persons domiciled within the state where such law prevails, and as respects property of others situated there,* but can bind neither person nor property beyond its limits." (The italics are ours.)   And in *Grover etc. Co.* v. *Radcliffe,* 137 U. S. 287, the supreme court of the United States, speaking of the states of Pennsylvania and Maryland, says: "And the distinction between the validity of a judgment rendered in one state, under its local laws on the subject, and its validity in another state is recognized by the highest tribunals of each of these states."

But whether or not the state of the law on the question determined by *Pennoyer* v. *Neff, supra,* was the same before as after that decision, it is apparent that *Pennoyer* v. *Neff, supra,* did not determine the question involved in the case at bar.   There Neff was a *bona fide* actual

nonresident. The facts of that case were that one Mitchell recovered in a state court of Oregon a personal judgment for professional services against Neff, who was a nonresident of that state, and resided in the state of California; that the service of summons upon Neff was by publication; that on a common execution issued upon that judgment certain land of Neff, situated in Oregon, was sold to Pennoyer; and that Neff brought an action against Pennoyer to recover said land, and recovered upon the ground that the judgment was not valid even in Oregon, and could not be satisfied out of land in Oregon, because substituted service would not support a judgment against *a nonresident.* There was no claim that the defendant had either residence or domicile in Oregon. In that case *the fact was* that Neff was in every sense a nonresident of Oregon, having his domicile and citizenship elsewhere; and the scope of a judicial *decision* is limited by the facts upon which it is based. In the second place, however difficult it may be to accurately define "residence" in its legal signification, and to distinguish it from " domicile," it is apparent that in the opinion in *Pennoyer* v. *Neff, supra,* the word "nonresident" is used as expressing the fact of an actual *bona fide* residence outside of the state where the judgment is rendered, such a residence as usually accompanies domicile—and not a mere temporary flight from one's home in *fraudem legis.* Indeed, throughout the opinion the words " residence" and " domicile" are used indiscriminately and as synonymous. There was no necessity in that case to notice any distinction—if there be any—between the words, for Neff was a nonresident in every sense, either of residence or domicile, and the opinion is to be taken as written in view of that fact. For instance, it is said in the opinion that " the plaintiff here was a *nonresident* of the state"; again, it is said that there cannot be an encroachment upon the independence of the state " in which the persons are *domiciled";* again, it is said that " the state, through its tribunals, may compel persons *domiciled* within its limits

to execute," etc; again, it is said that property within a state, owned by "*nonresidents*," may be subjected to certain processes, and that this "in no respect infringes upon the sovereignty of the state where the owners are *domiciled*"; again, "process from tribunals of one state cannot run into another state, and summon *parties there domiciled* to leave its territory and respond to proceedings against them"; and finally, the court, in the last sentence of its opinion, says: "The question here respects only the validity of a money judgment rendered in one state, in an action upon a simple contract against *the resident of another* without service of process upon him or his appearance therein." And as, in the case at bar, the appellant was neither a nonresident of the state where the judgment was rendered, nor domiciled elsewhere, as was the plaintiff in *Pennoyer* v. *Neff, supra,* the latter case cannot be relied on as imperative authority for holding that the power of the state of California to control and preserve, through her tribunals, the personal and property rights of her own citizens, can be evaded by flight perpetrated for that express purpose. As to the reasons sometimes given for an opposite rule, how can the dangers of judgments upon substituted service against persons who might not have seen the publication, be marshaled in aid of a party who, knowing of the coming suit, flees to avoid it? In *Cooper* v. *Reynolds*, 10 Wall. 308, no question was raised as to the validity of the asserted nonresidence of Reynolds.

That the laws of a sovereign are binding upon all its citizens domiciled within its borders, whether temporarily absent or not, seems to be the clear result of the authorities. "The laws of a sovereign rightfully extend over persons who are domiciled within his territory." (Story on Conflict of Laws, sec. 539.) Freeman, although he also includes the extraterritorial effect of a judgment, which does not concern us here, sums up the result of the authorities as follows: "The position, however, which seems to be best sustained, both by reason

and precedents, is that each state has the authority to provide the means by which its *own citizens* may be brought before the courts; that the courts of other states have no authority to disregard the means thus provided; and, finally, that every judgment or decree obtained in a state against some of its citizens, by virtue of a lawful though constructive service of process, should be obligatory upon such citizens in every other state whence it is taken. Nor is it destructive of the extraterritorial effect of a judgment based on constructive service that the defendant being a citizen of the state was *temporarily absent* therefrom. It is sufficient that he was at the time subject to the laws of the state and to the territorial authority of the court." There are numerous judicial decisions to the same point, one or two of which we will notice. In *Henderson* v. *Staniford*, 105 Mass. 504, 7 Am. Rep. 551, the court say: "The defendant was not in California when the action was commenced against him there; nor at any time during its pendency. No service of process or notice was ever made upon him personally. He did not appear by counsel, or otherwise, nor assent to the judgment which was rendered upon his default of appearance. But he had been for a long time before that a resident of California; the contract was made there; and that continued to be his legal domicile when judgment was rendered. He was, therefore, upon principle of international rights subject to the laws and to the jurisdiction of the courts of that state." In *Welch* v. *Sykes*, 3 Gilm. 201, 64 Am. Dec. 689, the supreme court of Illinois declare that "it is competent for each state to prescribe the mode of bringing parties before its courts"; and that, "although its regulations in this respect can have no extraterritorial operation, they are nevertheless binding *on its own citizens.*" In *Beard* v. *Beard*, 21 Ind. 321, the question is quite exhaustively considered and many authorities examined, and the general conclusion is that, "notwithstanding a state may authorize its courts to render personal judgment upon constructive notice against its citizens, it cannot, we

think, authorize such a judgment upon such notice against a citizen of another state, resident in such other state." But the statute there did not provide for service by publication, and the court say: "In such a case, that is, of temporary absence of a resident of the state, notice must be given by leaving a copy of process at his last place of residence." In *Burnam* v. *Commonwealth*, 1 Duvall, 211, the court of appeals of Kentucky, considering a statute which provided for substituted service, said: "We cannot adjudge any provision in the act to be unconstitutional. As in other cases, where actual notice cannot be given to absent defendants, there must either be no remedy, or constructive notice must be substituted as sufficient; and what constructive notice shall be given is a question of legislative discretion rather than of power." (In that case the defendants were presumably citizens and residents of the state, although temporarily absent.) In *Huntley* v. *Baker*, 33 Hun, 578, the action was upon a money judgment rendered against the defendant in the state of Wisconsin, upon substituted service, when the defendant, who had lived for a long time in Wisconsin, was absent from that state—and, in fact, he never returned to it. The court, after referring to the doctrine that there is generally no extraterritorial jurisdiction, say: "But it has been repeatedly held in England that this doctrine is not applicable when the person sought to be charged by judgment is a subject or citizen of the country where and at the time the proceedings are taken, and when they are in conformity to the statute there, although the person be then absent from the country; and that is put upon the general ground that the person domiciled there owes allegiance to the country and submission to its laws." It is then stated that there are not many reported cases on the point in this country, but reference is made to cases in the United States supreme court and in the court of appeals of New York where the English cases are cited with approval. The court then say: "Without stating the principle more at length, it

may be assumed that, by reason of the relation between the state and the citizen, which affords protection to him and his property and imposes upon him duties as such, he may be charged by judgment *in personam* binding on him everywhere as the result of legal proceedings instituted and carried on in conformity to the statute of the state, prescribing a method of service which is not personal, and which in fact may not become *actual* notice to him. And this may be accomplished in his lawful absence from the state." The court then states that it is not necessary to consider the distinction between domicile and residence; but that such question was "one of fact dependent upon all the circumstances appearing by and inferable from the testimony, to which it is unnecessary here to refer in detail," which justified the referee to conclude that the domicile or residence of the defendant had not been changed. And the evidence in that case was vastly stronger in favor of a permanent change of residence and domicile than in the case at bar. There are many other authorities to the same point, but we will only refer, in addition to those above cited, to Black on Judgments, section 907, and the numerous cases cited and quoted from in the notes to *Flint River Steamboat Co.* v. *Foster*, 48 Am. Dec. 273, 274.

In nearly all the cases on the subject the words "resident," "domicile," "citizen," and "inhabitant" are used indiscriminately to signify an actual permanent residence which has not been actually and in good faith changed; and "nonresident" is applied to one who is not such a citizen, inhabitant, or resident of, and has not such domicile within, the state in which the judgment is rendered. We are not concerned here with the question how far full faith and credit should be given to the judgment in another state, but only with the question: Is it *void* in this state? As the appellant was not a nonresident, the case does not fall within the decision in *Pennoyer* v. *Neff, supra*, and, under the general authorities, the judgment is valid in the state in which it was rendered. All that is necessary to be de-

termined in this case is that a citizen and resident of California cannot escape the performance of his duties, and baffle our courts in their attempts to enforce the rights of others against him, by sudden flight and temporary absence expressly intended for that purpose. Every rule of law and every sentiment of justice is an obstruction to the success of such strategy. Nor will the affirmance of the order appealed from be violative of either the general international law or the American interstate law. A sovereign state might be justified in refusing to enforce within its own territory, and against one of its own citizens, a judgment rendered in another state upon substituted service; but neither its interest nor its dignity would be touched by the enforcement of such a judgment by *another* state within *its* territory and against *its own citizens.*

We cannot see merit in the point made by appellant that the substituted service was not sufficiently in compliance with the statute of this state which provides for it. The main contention is that the statement in the affidavit for publication that the defendant "has departed from the state of California, and is now absent therefrom," is of a mere conclusion, and not of a fact; but it would be difficult to suggest any other language that would express the facts of departure and absence with more clearness and certainty. The fact that a few of those words are used in the statute does not prevent their use in an affidavit if they are apt words to express the meaning of the affiant.

Respondent contends, also, that the order appealed from should be affirmed upon the further grounds that those parts of the judgment which relate to the custody of the children and alimony are mere incidents to the divorce, and that the jurisdiction to grant the divorce, which is admitted on all hands, carries with it the jurisdiction of the incidents; and, furthermore, that the relation of children to parents is a *status* like that of marriage, and that, therefore, an action to determine the custody of children, like a suit for divorce, is in the

nature of a proceeding *in rem.* But it is unnecessary to discuss these points at length, because the views heretofore expressed would be determinative of the case in favor of respondent upon another ground. We may say, however, that so far as the custody of the children is concerned, this second contention of respondent seems to be correct. The judgment merely determines generally the custody of the children, and whether it could be enforced in another state or country is not here involved. It is settled law that a decree of divorce operates upon the relation, *the status,* and that, therefore, such a decree, founded upon constructive service by publication is valid, even as against one resident, and domiciled beyond the state. (See cases cited in notes to *Flint River Steamboat Co.* v. *Foster, supra.*) "A judgment for divorce is *quasi,* at least, *in rem.* Judgments *in rem,* it is well known, are not, as the name implies, confined to adjudications *against things.* They are rendered, in many instances, where the prior proceedings are entirely *in personam,* as in cases establishing or dissolving marriages." (Freeman on Judgments, sec. 606.) In *Pennoyer* v. *Neff, supra,* it is said: "The jurisdiction which every state possesses to determine the civil *status* and capacities of all its inhabitants, involves authority to prescribe the conditions on which proceedings affecting them may be commenced and carried on within its territory." Now, is not the relation between parent and child a "*civil status?*" It is so assumed to be in Cooley's Constitutional Limitations, sixth edition, page 499. In Bishop on Marriage, Divorce, and Separation, section 1189, it is said that "the relation of parent and child is a *status* . . . . like marriage." And in the *Estate of Newman,* 75 Cal. 213, 7 Am. St. Rep. 146, the court said: "So far as the action of *Maldonado* v. *Maldonado* affected the *status* of the parties *and the custody of the child,* it was a proceeding *in rem,* and service by publication in such case is good." (See, also, *Wakefield* v. *Ives,* 35 Iowa, 238, and *People* v. *Allen,* 40 Hun, 611.) In *Brenot* v. *Brenot,* 102

Cal. 294, it was held that, in an action for divorce, the custody of the children was an incident in the main relief sought—the divorce. (See, also, *Younger* v. *Younger*, 106 Cal. 377.) Upon these authorities, and upon principle, we think that, in an action brought for both divorce and the custody of the children, the latter is an incident of the former, and that the court has jurisdiction over the *status* founded on the relation of parent and child as well as of the *status* founded on the relation of husband and wife, even as against a *bona fide* nonresident domiciled elsewhere. And, in such a case, the actual physical presence of the children is no more necessary for jurisdiction over the *status* in the one instance, than is the presence of the husband necessary in the other. It is not necessary to determine whether or not jurisdiction to decree alimony would follow as an incident to the divorce. It is doubtful if the judgment in this case really awards any alimony; but, if it does, its validity in that respect has sufficient basis in the proposition first discussed in this opinion.

With respect to the statement of facts hereinbefore made, it is proper to observe that where, as in this case, the appeal is from a mere order of the court below granting or denying a motion, and where findings are not necessary, this court will assume the existence of such facts necessary to support the ruling of the lower court as fairly appear from the evidence. Here the preponderance of the evidence is largely in support of the facts above stated. Indeed, the fact that appellant fled the state, and clandestinely carried away the children to avoid the action, is too apparent to be even debatable.

The order appealed from should be affirmed.

BEATTY, C. J., and VAN FLEET, J., concurred in the dissenting opinion.

Rehearing denied.