Martha Hart Fitzgerald for Use of Foreman-State National Bank, Appellant, v. The First National Bank of Chicago and Richard I. Fitzgerald, Appellees.

Gen. No. 36,778.

Opinion filed December 11, 1933.

ROBERT L. WRIGHT, for appellant.

JOHN S. HUMMER, for appellees; HUMMER & HUMMER, of counsel.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

This appeal is by garnishor from an order entered on April 15, 1933, discharging the garnishees. The

garnishment was based upon a supposed personal decree entered November 10, 1932, in favor of the Foreman-State National Bank and against Martha Hart Fitzgerald, also known as Martha P. Hart, for the sum of $4,001.49. An execution issued on the decree and was returned ''no property found'' November 21, 1932. The affidavit for garnishment was filed December 3rd thereafter. The garnishees are the First National Bank of Chicago, Richard I. Fitzgerald and Martha P. Hart, administratrix of the estate of Ernest E. Hart, deceased.

The First National Bank answered in the garnishment suit that it held $332.61, but that the decree was void because defendant had not been personally served with summons. Richard I. Fitzgerald answered that the decree was void for the same reason. The summons for the garnishee, Martha P. Hart, administratrix, etc., was returned ''Not found'' and the case as to her continued. There was a hearing before the court without a jury, and April 15, 1933, the court found that the decree upon which the garnishment was based was void for want of personal service of summons upon defendant, Martha Hart Fitzgerald, and judgment in the case was entered accordingly.

The sole question to be decided is whether the finding of the trial court that the judgment, upon which the garnishment was based, was void is correct; and as the only evidence bearing upon that issue consisted of records of the court, there is no conflict as to the evidence.

The findings are to the effect that a summons in chancery returnable to the June term of the superior court issued for defendant, Martha Hart Fitzgerald, in a case of chancery begun against her by the Foreman-State National Bank; that it was returned by the sheriff of Cook county, Illinois, ''Not found''; that an alias summons returnable to the July term was then

issued but was not served; "that neither of said summons could be served upon said defendant because she wilfully concealed her whereabouts from the complainant and the said sheriff; that on the 25th day of August, 1932, an affidavit duly executed by the complainant's attorney, setting forth that upon due and diligent inquiry said defendant's place of residence could not be ascertained and said defendant could not be found so that process might be served upon her, was filed in the court; that a notice of the pendency of the suit was on the 30th day of August, 1932, mailed to said defendant at 7100 South Shore Drive, Chicago, Illinois, the address stated in said affidavit as her last known place of residence, by the clerk of this court; that said notice was published on the 26th day of August, 1932, and once each week for four consecutive weeks thereafter in the Chicago Daily Law Bulletin, a secular newspaper of general circulation throughout the County of Cook and State of Illinois, published at Chicago, Illinois; that neither the defendant Fitzgerald nor the defendant Harbor Securities Corporation filed an appearance in the cause and both of said defendants were duly defaulted in an order entered on the 5th day of October, 1932, and the bill of complaint, as amended, was thereby taken as confessed as to said defendants; that said Martha Hart Fitzgerald was known prior to her marriage on June 7, 1931, to Richard I. Fitzgerald as Martha P. Hart; that on the 21st day of May, 1929, letters of administration for the estate of Ernest E. Hart, the deceased husband of said defendant, were issued to her by the Probate court of Cook County, Illinois, and she has continuously acted as administratrix of said estate ever since said date; that at all times during the pendency of this suit she has resided in the State of Illinois; that on or before March 26, 1931, she distributed to herself as sole heir-at-law of said Ernest E. Hart the sum of $29,354.84 in

cash, in addition to a substantial amount of other personal property. . . ."

The decree further found that Martha Hart Fitzgerald was indebted to the Foreman-State National Bank in the sum of $4,001.49 on a certain stock subscription, and judgment was entered for that amount.

It is the contention of plaintiff that the service as shown by this record was legally sufficient to confer jurisdiction upon the superior court to enter this personal judgment; further, that defendant, Martha H. Fitzgerald, is estopped by her conduct in wilfully evading service of summons and in refusing to appear after receiving actual notice of the pendency of the suit and the entry of a decree therein, from making a direct or collateral attack upon the judgment which was rendered against her upon service as provided by the Chancery Act, and that the garnishees are therefore also estopped to deny the validity of the judgment. On the other hand, it is the contention of the garnishees that the decree is absolutely void for want of jurisdiction of the person of defendant because she was not personally served with summons.

Sections 12 and 13 of the Chancery Act, Cahill's St. ch. 22, ¶¶ 12, 13 (App'x) (Smith-Hurd's Ill. Rev. Stats. 1933, secs. 12 and 13, p. 252) provide, in substance, that whenever a complainant or his attorney shall file in the office of the clerk of the court where the suit is pending, an affidavit showing that any defendant resides or has gone out of the State, or on due inquiry cannot be found, or is concealed within the State, so that process cannot be served upon him, and stating the place of residence of such defendant, if known, or that upon diligent inquiry his place of residence cannot be ascertained, the clerk shall cause publication to be made as therein provided; that this notice may be given at any time after the commencement of the suit and shall be published at least once each week for

three successive weeks, and that no default or pro-
ceeding shall be taken against any defendant not
served with summons, or a copy of the bill, and not
appearing, unless the first publication be at least 30
days prior to the first day of the term of such court
at which the default is proposed to be taken. The fif-
teenth section provides that the cause may be con-
tinued for want of due publication or service and that
the same proceeding may be had at a subsequent term.
The sixteenth section provides that a defendant who
has been duly served in the way provided by the act,
or by notice at the expiration of the time required to
be given, may be defaulted, and the bill taken as con-
fessed.

Section 17 provides that upon showing sufficient
cause at the next term and paying the costs, the de-
fendant may have the decree entered vacated, and the
cause shall then proceed as in other cases. The nine-
teenth section provides that when a final decree shall
have been entered against a defendant who has been
served by publication but not with a copy of the bill,
and the defendant shall not have received the notice
required to be sent him by mail, or otherwise brought
into court, he, or his heirs or personal representatives,
shall, within 90 days after notice in writing given him
of such decree, or within one year after such decree, if
no such notice shall have been given as aforesaid, ap-
pear in open court and petition to be heard touching
the matter of the decree, and that the court upon notice
to the adverse parties shall set the petition down for
hearing, and upon the hearing make proper decree in
the case.

The Chancery Act does not appear to particularly
define the nature or quality of the decree which may
be entered against a defendant so served, but the gar-
nishor plaintiff contends, upon the authority of *Welch
v. Sykes,* 3 Gilm. (8 Ill.) 197; *Nelson v. Chicago, B. &*

*Q. R. Co.,* 225 Ill. 197, that the statute authorizes a personal judgment. In *Welch v. Sykes,* plaintiff sued in the courts of Illinois in an action of debt based on a judgment of a court in Maryland. There were several defendants. One of the defendants only was served with process. He appeared and filed two pleas setting up that he had never been served with process and had no notice of the pendency of the suit in Maryland. Plaintiff demurred to the pleas, and the demurrer was sustained and judgment entered. Upon appeal to the Supreme Court the judgment was reversed, the court holding in substance that it was competent for each State to prescribe the mode of bringing parties before its courts; that while its regulations in this respect could not have extraterritorial operation, they were binding on its own citizens; that for aught that appeared on the face of the pleas, the defendant might have been a resident of the State of Maryland and received such notice of the pendency of the suit as conferred authority on the court to hear the case and pronounce judgment; or if he were a resident of another State, it may have been that he had retained an attorney and entered his appearance.

In *Nelson v. Chicago, B. & Q. R. Co., supra* (also reported at 116 American State Reports 133) it appeared that Nelson sued defendant railroad company in the circuit court of Kane county, Illinois; that summons issued to the sheriff and was returned by him not served because neither the president nor any of the officers or agents of the railroad company, with whom the statute provided a copy of the summons might be left to effect service, could be found in the county. Thereupon, plaintiff proceeded under paragraph 5 of the Practice Act to procure service by publication and mail, as in chancery cases is provided in sections 12 and 13 of that act, Cahill's St. 1933, ch. 22, ¶¶ 12, 13 (App'x). The railroad company entered a special ap-

pearance and moved to quash the service. The motion was sustained, and plaintiff electing to stand by the service, the suit was dismissed and an appeal taken to the Supreme Court. That court held in substance that it was the intention of the legislature to provide that a personal judgment could be obtained against a railroad company in this manner; that section 5 was not void or unconstitutional as providing for procedure which did not constitute due process of law, and that while service of process "either actual or constructive" upon a nonresident defendant outside of the limits of the State where the action was pending would not authorize the rendition of a personal judgment or decree, such service was sufficient upon which to base a decree changing the marital status in a proceeding for divorce, or a judgment or decree disposing of property situated in the jurisdiction of the court wherein the action was pending; that each State might determine for itself by what method process might be served upon its citizens within its boundaries, and service of process within the State in the manner pointed out in the statute (if the method of service of process provided for amounted to due process of law) would be sufficient to authorize the courts of the State within whose jurisdiction the service of process was had to pronounce a personal judgment or decree against a defendant so served. The court cited *Welch v. Sykes,* 3 Gilm. (8 Ill.) 197; *Smith v. Smith,* 17 Ill. 482; *Bickerdike v. Allen,* 157 Ill. 95, 29 L. R. A. 782, as well as *Bardwell v. Collins,* 44 Minn. 97; *Pinney v. Providence Loan & Inv. Co.,* 106 Wis. 396, 50 L. R. A. 577, 80 Am. St. Rep. 41.

*Bickerdike v. Allen,* 157 Ill. 95, is cited by both parties to this controversy. That was (in the trial court) a proceeding in the nature of scire facias, provided for by the then section 26 of the Practice Act (which is now section 43 of the same chapter), Cahill's St. ch.

110, ¶ 43 (App'x), (Smith-Hurd's Ill. Rev. Stats. 1933, ch. 110, sec. 43.) After the judgment had been revived complainant brought a creditor's bill based upon it, and defendant by way of answer set up that section 26 was unconstitutional as being in conflict with section 2 of article 2 of the Constitution of Illinois, which provides that no person shall be deprived of life, liberty or property without due process of law, and that the judgment was void because the service upon defendant was by publication instead of personal service. The court in its opinion stated in substance that where defendant was a nonresident of the State and the proceeding was not *in rem* but *in personam,* the publication of notice and the mailing of a copy thereof, without personal service or appearance, would not give a court of this State jurisdiction over the person of the defendant, so as to make a judgment *in personam* against him valid and impervious to collateral attack, except in cases affecting the personal or civil *status* and capacities of the citizen of the State toward a nonresident and except in cases where corporations might have been deemed to have assented in advance to receive such service. The opinion cites *Pennoyer v. Neff,* 95 U. S. 714. The opinion further stated that section 26 so far as it applied to defendants residing outside of the State could not be upheld as a valid law, but asserted that the scire facias proceeding was not a proceeding *in rem,* certainly not where the original judgment sought to be revived was a judgment *in personam;* that if the statute had provided for bringing in a resident of the State by publication of the notice without the mailing of any notice to him, the same objection would lie as in case of a nonresident. However, it was said that the statute required both publication and mailing to the address of the defendant, and that if a defendant resided in the State and had a known residence but concealed himself so that process could not

be served, if the notice as specified in the statute was sent by mail and if he received the notice so sent, it was notice just as much as if a summons had been served on him. The opinion further stated:

"In such case the judgment cannot be said to have been rendered without jurisdiction over the defendant. The proceeding by scire facias to revive a judgment *is not a new suit, but merely the continuation of the old one.* It does not determine the obligations of the defendant to the plaintiff as involved in the original controversy and as settled by the former judgment, but merely seeks a revival of the former judgment in order to have execution of it. The defendant cannot show any matter which was pleaded or might have been pleaded in the former action. The only defenses which can be set up in the scire facias proceeding are that no judgment was rendered, or, if one was rendered, that it has been satisfied or discharged. (21 Am. & Eng. Ency. of Law, pages 855, 864; *Smith v. Stevens,* 133 Ill. 183.)

"Hence, we are inclined to think that section 26, taken in connection with section 12 of the Chancery act, is a constitutional enactment so far as it provides for service by publication of notice and mailing a copy thereof to residents of the State, whose residence is stated in the affidavit."

As defendant points out, we think there is a vast difference between the proceeding to adjudicate the rights and differences between parties in the first instance and the proceeding by scire facias to revive a judgment by which such rights have been adjudicated. As the opinion states, such a proceeding is not a new suit but merely a continuation of the old one. At any rate, the opinion does not by any means hold that the procedure provided for under sections 12 and 13 of the Chancery Act, Cahill's St. ch. 22, ¶¶ 12, 13 (App'x), is sufficient to give jurisdiction of the person,

but only that it does so when had pursuant to section 26 of the Practice Act, Cahill's St. ch. 110, ¶ 43 (App'x). No case is cited, and it is believed none can be found in the books, holding that the service of process as provided for in sections 12 and 13 when not based upon some other statutory provision showing the intention of the legislature, is sufficient to authorize a personal judgment.

We cannot think that it was the intention of the legislature in the enactment of sections 12 and 13 to authorize personal judgments upon process which consist simply of notice by publication and mailing. Such construction would place in great peril the substantial rights of citizens within the State. It is conceded that service of this sort is contrary to the common law and purely statutory, and therefore the provisions of the statute should be construed most strictly in favor of the defendant. We know of no case in any court where service of this kind, in the absence of some specific statutory provision limiting it to a particular kind of action, has ever been held to confer jurisdiction to render a personal judgment. While not controlling, it is significant as indicating the policy of this State, that the new Practice Act, which will go into effect January 1, 1934 (see Laws of Illinois, 58th General Assembly, 1933, section 14, pp. 784 to 836), Cahill's St. ch. 110, ¶ 142, and which treats of service by publication and mailing, provides in substance for such service only "in any civil action affecting property or status within the jurisdiction of the court, or in any action at law to revive a judgment or decree." It is apparent, we think, that this section is intended to re-enact the law on this subject as it now exists.

In this opinion we have not discussed the question of whether it might not be lawful and constitutional within the meaning of the due process clause for the legislature in its discretion to enact a law which would

provide for service by publication and mailing in all cases. The decision of that question is, in our opinion, unnecessary to the determination of this case. We do hold that sections 12 and 13 of the Chancery Act may not be interpreted to show such intention of the legislature. Whether such a statute, if enacted, would be held invalid as against fundamental rights is a serious question.

The leading case upon this subject is *Pennoyer v. Neff*, 95 U. S. 714, where Justice Field, reviewing *Cooper v. Reynolds*, 10 Wall. (U. S.) 308; *Webster v. Reid*, 11 How. (U. S.) 437, and other cases, held that such service of process as to a nonresident, was clearly invalid. There is language in the opinion and in the authorities relied on therein from which it might be reasonably argued that such statute would also be invalid even as to residents. As indicating the evolution of the law and the tendency of the courts in this regard the cases of *De la Montanya v. De la Montanya*, 112 Cal. 101, 32 L. R. A. 82, and *Raher v. Raher*, 150 Iowa 511, 35 L. R. A. (N. S.) 292, as well as *McDonald v. Mabee*, 243 U. S. 90, are interesting.

We have not overlooked the arguments of plaintiff based upon the evidence introduced before the trial court as to the conduct of defendant as disclosed by the records and proceedings in the probate court where she was acting as administratrix. That argument, however, really assumes the point at issue. No evidence at all could be introduced against defendant until she had been in a lawful manner summoned before a court duly constituted under the law of the land. However vexatious her conduct may have been, this would not justify a construction of the statute which would subject every person and all the property of the State to vexatious litigation. We hold that service by publication and mailing under provisions 12 and 13 of the Chancery Act, in the absence of some

other supporting statute, did not authorize the rendition of a personal judgment.

The judgment upon which this garnishment proceeding is based being void, it follows that the court properly discharged the garnishees, and the order of the court in that regard is affirmed.

*Affirmed.*