STATE EX REL. SUTTON, RELATOR, v. DISTRICT COURT
OF THE SECOND JUDICIAL DISTRICT
ET AL., RESPONDENTS.

(No. 1,804.)

(Submitted April 12, 1902.   Decided July 21, 1902.)

*Supreme Court—Jurisdiction—Writ of Supervisory Control—*
*Constitutional Law—Judgment of Contempt.*

Code of Civil Procedure, Sec. 2183, providing that the judgment in a case of
contempt is final and conclusive, and there is no appeal, but the action of
a district court can be reviewed on a writ of *certiorari* by the supreme
court, if intended to preclude the supreme court from reviewing, except by
*certiorari*, a judgment of contempt, violates Constitution, Art. VIII, Sec.
2, giving the supreme court a general supervisory control over all inferior
courts, under such regulations and limitations as may be prescribed by
statute ; a writ of supervisory control being the only means by which the
question whether there is evidence to support a judgment of contempt can
be determined.

WRIT of supervisory control, on the relation of Wakeman Sutton, to the district court of the Second judicial district, and William Clancy, a judge thereof.

*Messrs. McBride & McBride,* for Relator.

*Messrs. McHatton & Cotter,* for Respondents.

MR. JUSTICE PIGOTT delivered the opinion of the court.

Wakeman Sutton was adjudged guilty of a constructive contempt of the the district court of Silver Bow county. One of the penalties imposed by the judgment was a fine of $200, with imprisonment until paid or satisfied. At his instance, a writ of *habeas corpus,* aided by a writ of *certiorari,* was issued by a justice of this court. After a hearing, the writs were quashed, and the proceeding was dismissed on the ground that the judgment sought to be annulled was rendered by a court having jurisdiction of the subject-matter and of the parties. We held that the supreme court could not, upon such proceedings in *habeas corpus* or *certiorari,* or both, examine the evidence received at the hearing on the charge of contempt. (*In the matter of the petition of Wakeman Sutton for writ of habeas corpus; and, in aid thereof, State ex rel. Sutton* v. *District Court of Second Judicial Dist.,* 26 Mont. 557.)

Thereafter the present application was made by means of a verified petition containing copies of all the proceedings, including the evidence adduced in the district court. The applicant asks for a writ of supervisory control commanding the defendants district court and judge to vacate the judgment.

The jurisdiction of the supreme court to entertain the petition is challenged by a motion to dismiss the proceeding, the defendants insisting that the only means by which a judgment of contempt can be brought up for review is by *certiorari* as provided in Section 2183 of the Code of Civil Procedure, and that, unless annulled or modified on *certiorari,* such a judgment is absolutely final and conclusive, and therefore beyond the power of this court to consider. In short, the contention of the defend-

ants is that Section 2183 prescribes the only means whereby judicial relief may be obtained against judgments of contempt. That section reads: "Section 2183. The judgment and orders of the court or judge, made in cases of contempt, are final and conclusive, and there is no appeal; but the action of a district court or judge can be reviewed on a writ of *certiorari,* by the supreme court or a judge thereof, and the action of a justice of the peace or other inferior court by the district court or judge of the county in which such justice or judge of such inferior court resides." Do these provisions preclude the supreme court from employing any means, other than *certiorari,* to review the integrity of judgments in contempt proceedings? We think they do not. Sections 2 and 3 of Article VIII of the Constitution contain three several and distinct grants to the supreme court: (1) The grant of appellate jurisdiction in all cases at law and in equity, subject to such limitations and regulations as the legislative assembly may prescribe, together with the incidental power to issue, hear, and determine all such original and remedial writs as may be necessary or proper to the complete exercise of such jurisdiction; (2) the grant of original jurisdiction to issue and to hear and determine certain enumerated writs; and (3) the grant (contained in Section 2) of a general supervisory control over all inferior courts, under such regulations and limitations as may be prescribed by statute. (*State ex rel. Whiteside* v. *District Court,* 24 Mont. 539, 63 Pac. 395; *Finlen* v. *Heinze et al.,* 27 Mont. 107, 69 Pac. 829.) Now it must be at once conceded that contempt proceedings are not, within the meaning of the constitution, cases at law or in equity which, in the absence of legislative action authorizing it, may be reviewed by appeal. In *In re Boyle,* 26 Montana Reports, 365, 68 Pacific Reporter, 409; and in *State ex rel. Healy* v. *District Court,* 26 Montana Reports, 224, 68 Pacific Reporter, 470, we have held that, on *certiorari,* the question whether there was evidence in support of a judgment for contempt cannot be determined. Is a person, then, remediless whenever a district or justice's court of competent jurisdiction adjudges him guilty of constructive contempt without evidence to support the charge?

Must he suffer such a judgment to be executed against his person and property or either? If any judicial relief can be obtained, it must be through the exercise, by this court, of its constitutional power of supervisory control. To this court has been confided and intrusted the ultimate and supreme judicial power of supervisory control over all the inferior courts within the state. It is a power liable to abuse, and should be exercised with discretion, caution, sparingly, and only in exigent cases, to protect a manifest right or to redress a palpable wrong. We have just decided in *Finlen* v. *Heinze, supra,* that the appellate jurisdiction with which the organic law has clothed the supreme court cannot be taken away or diminished by the legislative assembly. Limitations and regulations may properly be prescribed, provided the right of effective appeal be not denied or substantially invaded. The same rule seems applicable to the present matter. The power to exercise a general supervisory control over district courts, being conferred by a constitutional grant, cannot be lessened or interfered with by the legislative assembly. It may, of course, prescribe reasonable regulations and limitations as to the time within which, and the mode by which, the relief may be sought; the procedure is a legitimate subject of legislation,—for instance, the legislative assembly may require the application to be made within a certain period of time, it may require a bond or undertaking, it may provide for authentication and certification of the record or transcript, and the like. But is without power to deprive this court of any part of its jurisdiction conferred by a rigid constitution. If the effect of Section 2183, *supra,* be a declaration that the action of inferior courts can be reviewed only on *certiorari,* it must be held to be an attempt to withdraw from the supreme court part of its jurisdiction by confining the scope of its review to the single question which can be decided on *certiorari.* Concede the right of the legislative assembly in this case so to curtail the jurisdiction of the supreme court, and its right to do so in any case must, as it seems to us, be likewise conceded. The result would be that the legislative assembly may abolish review through the exercise of supervisory control, and lawfully declare

that the writ of *certiorari* (which is one of the writs enumerated in a separate grant of power) shall be the sole means of obtaining redress. If the section, when so interpreted, be consistent with the constitution, then a statute in terms destroying the jurisdiction of the supreme court to exercise such control would necessarily be valid. But the legislative assembly may not substitute for an adequate remedy created and guarantied by the constitution a proceeding which is inappropriate, and under which the particular wrong cannot be redressed.

Our conclusion being that the supreme court, notwithstanding Section 2183, *supra,* has power, by means of writs of supervisory control, to review judgments of contempt, on the application of the contemner, the next question is whether the present case is one calling for the issuance of such a writ. We believe it is. There was at least a technical violation of the injunction by those in Sutton's employ, for which, as we incidentally observe, they have been punished as for contempt; but the transcript sets out all the evidence taken in the district court, and there is not any substantial evidence from which may be justly deduced the inference that Sutton either intentionally, or through carelessness, disobeyed the injunction order in the particulars set forth in the affidavit charging him with contempt, or permitted his agents or servants to do so. The district court, by its judgment in a summary proceeding, has, without evidence to justify it, wrongly declared that Sutton shall be deprived of his liberty and of property. The case is exigent; the wrong is manifest. Let a writ of supervisory control issue, commanding the defendant district court and judge to set aside, annul, and for naught hold the judgment of September 3, 1901.

MR. CHIEF JUSTICE BRANTLY: I concur.

MR. JUSTICE MILBURN: I concur in the foregoing opinion. Counsel for the defendants contend that there is no remedy for a person deprived of his liberty or property by an inferior court which acts within its jurisdiction; and that the judge of such court, even if he act arbitrarily, maliciously, or viciously, and

do a flagrant wrong to an unoffending person, being responsible to the people, may be removed from office for his wrongdoing. If this be true, a citizen may be fined $500 twice a day, for thirty days, and the records be made regular upon their face, showing jurisdiction of the court. If such acts of the court be all done through malice, then, if the contention of the defendants be correct, the citizen must submit without remedy, and lose his property, or be imprisoned in default. It is said that the conscience of the single subordinate officer, perhaps some ignorant and unworthy person unfortunately holding the office of justice of the peace by the vote of a dozen voters, is ultimate, and that he cannot be controlled in a case of fine or commitment for contempt of court. This was the danger to which citizens were subject until the people, by their representatives in the constitutional convention, provided that the supreme court, composed of justices chosen, one every two years, from the whole state, and thus, as far as possible, removed from prejudice, local influence and personal contact with interested litigants, and being influenced by the consciences of its members, should control and exercise supervision over inferior courts and the judges thereof. Perfection cannot be attained in governments. The people, being unwilling to leave their liberties entirely to what in some, and happily only a very few, cases might be whim, caprice, prejudice, or gross ignorance, provided by their constitution that, in cases of great emergency, the acts of inferior courts could be controlled by the supreme court. It is a tremendous power, but not more so than the alleged arbitrary power said to be reposed in the inferior courts. It is to be exercised only when solemn duty shall force interference. There may be, occasionally, times when the ordinary processes and procedure of the law are inadequate. If courts tyranically deprive citizens of their liberty or property, and there be no appeal or other remedy except petition to the supreme court for a writ of supervisory control, at such times the supreme court, under the power conferred upon it by the people for their own protection, must exercise this dangerous power,—dangerous because it is possible that it may be improperly exercised. The danger of its im-

proper exercise by the supreme court, removed, as its justices are, from local clamor and prejudice, is not as great as uncontrollable power in a single judge or justice of the peace, who, it is claimed, may do as he please in contempt cases, provided he cause the record to be written up with skill, and be only liable to a proceeding for his removal, or to have his acts passed upon at the polls at the next election, if he stand for re-election, and perhaps by only a single score of voters in a township election. This writ must not be, and will not be, used to supplant effective remedies provided by law.