STATE EX REL. NIPP, RELATOR, *v.* DISTRICT COURT ET AL., RESPONDENTS.

(No. 3,225.)

(Submitted November 25, 1912.   Decided December 7, 1912.)

[128 Pac. 590.]

*Divorce—Decrees of Foreign Jurisdictions—Constitution—Full Faith and Credit Clause—Minor Children—Custody—Removal from State—Jurisdiction—Pleading—Supervisory Control—Purpose of Writ.*

Divorce—Decree of Foreign Jurisdiction—Custody of Minor Children—Conclusiveness.
  1.  A decree of divorce rendered by a court of general jurisdiction in another state, awarding the custody of a minor child to the wife, with the right in the father, however, to visit it at all times, *held* binding, under the full faith and credit clause of the federal Constitution, upon the courts of this state (to which the child was removed by the father soon after the rendition of the decree), in the absence of allegation and proof that since its entry the wife had become an unfit and improper person *to have such custody; therefore, allegations, made by the* father in his return on *habeas corpus* by the mother to regain custody, affecting the fitness of the latter at the time the decree was rendered were properly stricken, such matters being concluded by the decree.

Same—Custody of Minors—Right of Visitation—Removal from State—Jurisdiction.
  2.  The provision in a decree of divorce which gave the custody of the minor son of the parties to the father, and that of the daughter to

the mother, that each party should at all times have the right to visit the child awarded to the other, each being specially enjoined from putting any obstacle or hindrance in the way of such visitation, impliedly prohibited the father from removing the minor in his charge from the jurisdiction of the court whose ward he then was.

Same.

3. The removal of a minor from a foreign state into Montana, by a father into whose custody he had been given with the condition that the mother should have the right to visit the child at all times, did not have the effect of depriving the court which rendered the decree of divorce of jurisdiction to amend it so as to enforce the right thus accorded to the mother.

Same—Jurisdiction—Pleading.

4. In pleading a decree of divorce of a court of another state, jurisdiction is sufficiently averred if it is made to appear that the court which rendered it is one of record of general jurisdiction.

Supervisory Control—Technical Error not Affecting Merits—Effect.

5. Where *habeas corpus* proceedings were determined on the merits of the application and no fundamental rights of any of the parties was violated by the decision of the court, mere technical error on its part, not affecting the merits, is insufficient to warrant a cancellation of its order on application for writ of supervisory control.

Same—Purpose of Writ.

6. The purpose of the writ of supervisory control is not to correct mere error within jurisdiction, except in so far as it is necessary in order to prevent irreparable injury to a litigant resulting from arbitrary or oppressive action by a lower court.

Original application for writ of supervisory control, by Ludwig Nipp, to review and set aside an order of the district court of Fergus county, made on application for *habeas corpus*, awarding to Mary Nipp, relator's divorced wife, the custody of their minor son.  Dismissed.

*Mr. J. C. Huntoon,* and *Mr. Wm. M. Blackford,* for Relator, submitted a brief; *Mr. Blackford* argued the cause orally.

Relator earnestly insists that it was for the district court of Fergus county to determine in the *habeas corpus* proceeding what was for the best interests of the boy, regardless of the decree of the Nebraska court changing the custody to the mother while he was permanently domiciled in this state, and that the district court improperly struck out the very allegations in the answer of the relator under which such proof might have been offered. The domicile of the parent having the custody of the child establishes the domicile of the child. (*Fox* v. *Hicks,* 81 Minn. 197, 50 L. R. A. 663, 83 N. W. 538; *Lanning* v. *Gregory,* 100 Tex. 310, 123 Am. St. Rep. 809, 10 L. R. A., n. s., 690, 99 S.

W. 542.)   By the term "domicile," in its ordinary acceptation, is meant the place where a person lives and has his home. (*Mitchell* v. *United States,* 21 Wall. (U. S.) 350, 22 L. Ed. 584.) The relator had been permanently domiciled in Fergus county nearly fourteen months before the amendment of the Nebraska divorce decree changing the custody of the boy from the father to the mother.   The premises upon which this decree was made was not because of any unfitness of the father, but based entirely upon the removal of the boy from Douglas county, Nebraska. The boy's residence and home in Fergus county had become an established fact long before this amended decree.   He had become a citizen and resident of this state protected by, and amenable to, its laws.   The best interests of the child is always the primary consideration which should govern the court in taking the custody of children from one person and giving it to another.   This is the express law of this state.   (Rev. Codes, secs. 3783, 3758, 3759, 3744.)

From a parental standpoint, the father and mother being equally qualified in character and ability for the custody of the child, in the eyes of the law the father's right is superior to the mother's, and the courts must maintain it.   (*State ex rel. Giroux* v. *Giroux,* 19 Mont. 161, 47 Pac. 798.)   The welfare of the child must be most regarded by the court whenever a controversy arises as to its custody.   (*Id.*)   And this is so in a proceeding of *habeas corpus* in another state to which the children had been removed from that in which they had been awarded to one of the parents in a decree dissolving the marriage.   (*In re Bort,* 25 Kan. 308, 37 Am. Rep. 255; *People ex rel. Allen* v. *Allen,* 105 N. Y. 628, 11 N. E. 143; *Kentzler* v. *Kentzler,* 3 Wash. 166, 28 Am. St. Rep. 21, 28 Pac. 370; *Clarke* v. *Lyon,* 82 Neb. 625, 20 L. R. A., n. s., 171, 118 N. W. 472.)   "When an infant is brought into court in obedience to a writ of *habeas corpus,* it is in the custody of the court, subject to its disposition, and this power rests upon the broad foundation of the general jurisdiction of the courts over infants.   The power of a court over infants thus before it is not limited as to orders as to custody." (*Bullock* v. *Robertson,* 160 Ind. 521, 65 N. E. 5; *In re King,* 66 Kan.

695, 97 Am. St. Rep. 399, 67 L. R. A. 783, 72 Pac. 263; *In re Shephard,* 67 Kan. 870, 74 Pac. 1133.)

Through the medium of the *habeas corpus* proceeding, relatrix therein attempts to enforce the decree of the Nebraska court in this state.   The judgment of the Nebraska court has no extraterritorial effect as a judgment. (*Cole* v. *Cunningham,* 133 U. S. 107, 33 L. Ed. 538, 10 Sup. Ct. Rep. 269; Black on Judgments, sec. 682.)   A judgment of another state will not be enforced here unless a judgment is recovered on such judgment in this state. (*Brown* v. *Campbell,* 100 Cal. 635, 38 Am. St. Rep. 314, 35 Pac. 433.)   A judgment of a sister state will, as a general rule, be accepted as conclusive proof of rights finally adjudicated by the courts of that state having jurisdiction of the parties and the subject matter. (Freeman on Judgments, sec. 559; Black on Judgments, sec. 857.)   But judgments relating to the custody of children are an exception to this general rule.   Such judgments are not conclusive even as evidence in another state.   No person has an absolute right to the custody of a minor.   The state is virtually a party to every controversy involving the custody of a minor.   It is always considered as the ward of the state and the courts.   The best interest of a minor is always an open and paramount question, and the courts of another state will award the custody of children with a view to what may seem their best interests, regardless of such judgments.   (*In re Bort, supra; In re King,* 66 Kan. 698, 97 Am. St. Rep. 399, 67 L. R. A. 783, 72 Pac. 263; *Avery* v. *Avery,* 33 Kan. 1, 6, 52 Am. Rep. 523, 5 Pac. 418, 422; *Kentzler* v. *Kentzler, supra; In re Barnes,* 30 Ohio L. J. 164; *Kline* v. *Kline,* 57 Iowa, 386, 42 Am. Rep. 47, 10 N. W. 825; *Woodworth* v. *Spring,* 86 Mass. 321; *Matter of Rice,* 42 Mich. 528, 4 N. W. 284; *Matter of Heather Children,* 50 Mich. 261, 15 N. W. 487; *In re Stockman,* 71 Mich. 180, 38 N. W. 876; *Kraft* v. *Wickey,* 4 Gill & J. 332, 23 Am. Dec. 569; Black on Judgments, sec. 861; 2 Bishop on Marriage and Divorce, 6th ed., 604; 13 Am. & Eng. Ency. of Law, 965, 968, 960.)

The amended decree can have no greater legal effect or confer greater power than an order constituting the mother guardian of the person of the boy.   If this is so, then the courts of this

state are not bound to recognize either her authority or the judgment on which it rests. (Rev. Codes, sec. 7919; *Morgan* v. *Potter,* 157 U. S: 197, 39 L. Ed. 670, 15 Sup. Ct. Rep. 590; *Curtis* v. *Smith,* 6 Blatchf. 537, Fed. Cas. No. 3505; 13 Am. & Eng. Ency. of Law, 2d ed., 966, and notes; *In re Bort, Kentzler* v. *Kentzler, People ex rel. Allen* v. *Allen, In re Barnes, supra.*)

The petition of relatrix for a writ of *habeas corpus* recites that "It was ordered that this relatrix have," *etc.* The amended decree is denominated in the same petition as an "order duly docketed and rendered," but nowhere is the same alleged to be duly given or made. The term "duly rendered" is not the equivalent of "duly given or made." (*Young* v. *Wright,* 52 Cal. 407, quoted with approval in *Mears* v. *Shaw,* 32 Mont. 578, 81 Pac. 338, and *Harmon* v. *Comstock Horse & Cattle Co.,* 9 Mont. 248, 23 Pac. 470.)

*Messrs. Belden & De Kalb,* for Respondents, submitted a brief; *Mr. H. L. De Kalb* argued the cause orally.

Relator claims that the petition below fails to allege jurisdiction, in that the pleading does not state that the judgment or order in the Nebraska court was "duly given or made." Section 6571, Revised Codes excuses a pleading of jurisdictional facts when the pleading is in conformity therewith. But literal compliance therewith is unnecessary. Equivalent language may be used. The statement that the judgment or order was "duly docketed and rendered" is equivalent. (*Harmon* v. *Comstock Horse & Cattle Co.,* 9 Mont. 243, 23 Pac. 470; *Walter* v. *Mitchell,* 25 Mont. 385, 65 Pac. 5; *Mears* v. *Shaw,* 32 Mont. 575, 81 Pac. 338; *Young* v. *Wright,* 52 Cal. 410.) But we contend that regardless of the fact whether or not we have brought ourselves within the provisions of the section, the pleading sets up the jurisdictional facts, tested by the rules which would govern in case no attempt was made to comply with the provisions of section 6571, *supra.* (23 Cyc. 1567.)

It is next claimed that the court below had no jurisdiction over the boy, Freddie Nipp, by reason of his absence from Nebraska at the time of the amendment of the decree, regardless of

the fact that the parent in whose custody he was at the time was duly served with process and made an appearance in the proceeding. This, we think, is resolved against the relator by the *quantum* and quality of judicial authority. (14 Cyc. 804; *Morrill* v. *Morrill,* 83 Conn. 479, 77 Atl. 1; *State* v. *Rhoades,* 29 Wash. 61, 69 Pac. 389; *Hardin* v. *Hardin,* 168 Ind. 352, 81 N. E. 60; *Baily* v. *Schrader,* 34 Ind. 260; *Hammond* v. *Hammond,* 90 Ga. 527, 16 S. E. 265; *Miller* v. *Higgins,* 14 Cal. App. 156, 111 Pac. 403; *Hanrahan* v. *Sears,* 72 N. H. 71, 54 Atl. 702; *Wakefield* v. *Ives,* 35 Iowa, 238; *Stetson* v. *Stetson,* 80 Me. 483, 15 Atl. 60.) This court has set at rest the question of the binding force of a decree awarding children in a case of this character; and the court reserved the question as to whether or not proof could be adduced as to the fitness of the parties, where the condition arose subsequently to the rendition of the original decree. (*State* v. *Giroux,* 19 Mont. 149, 47 Pac. 798.)

Relator next contends that the court should not have stricken from his answer below the allegations touching fitness of relator below. We submit that under the full faith and credit clause of the federal Constitution, the court could not consider any evidence on the subject, but was limited in its power, and could only enforce the decree as it found it. It is true that some of the cases relied upon by relator herein, and *dicta* in other cases tend to support the proposition that the court may consider, in a case of this kind, unfitness arising subsequent to the original decree. But the allegations stricken from the answer do not bring relator within the rule even of those extreme cases. *In re Bort,* 25 Kan. 305, 37 Am. Rep. 255, chiefly relied upon by relator below, was disapproved in *Allen* v. *Allen,* 40 Hun, 611. In further answer to this contention of relator, we think the lower court was limited by law, and could consider fitness only in the cases falling within sections 3678 and 3744, Revised Codes. The California court has had occasion to construe section 138 of the California Civil Code, corresponding to our section 3678, and we think an examination of the construction placed upon the authority thereby granted will convince this court that whether or not the allegations stricken were permitted

to remain, the court had no jurisdiction to consider them.
(*McKay* v. *McKay*, 125 Cal. 65, 57 Pac. 677; *Shattuck* v. *Shattuck*, 135 Cal. 192, 67 Pac. 45.) But there is another phase of this subject, touching upon the retention of jurisdiction. When the Nebraska court made an order permitting the other spouse to see the boy, it was an implied prohibition of the removal of the boy from Nebraska, and because of such prohibition the court there never lost jurisdiction of the boy, regardless of his absence from the state at the time of the amendment of the decree. (*Campbell* v. *Campbell*, 37 Wis. 206; *Hewitt* v. *Long*, 76 Ill. 399; *Miner* v. *Miner*, 11 Ill. 43.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The purpose of this application is to have this court, by the exercise of its supervisory power, vacate and set aside an order of the district court of Fergus county, made upon an application for *habeas corpus*, awarding to Mary Nipp the custody of her minor son, Freddie Nipp. Mary Nipp and Ludwig Nipp, the relator herein, were married at Bennington, Douglas county, Nebraska, on June 25, 1902. They lived together as husband and wife, near Omaha in that state, until April 8, 1911. There were born to them a son, Freddie, and a daughter, Emilie, the former being now of the age of nine years. During the early part of the year 1911, Mary Nipp brought her action in the district court of Douglas county, Nebraska, to have the marriage dissolved. The relator, having been personally served with summons, appeared and made defense. The result was that on April 8, 1911, the court found in favor of the plaintiff and rendered its decree dissolving the marriage. It was therein directed that until further order, the father should have the custody of the son, and the mother that of the daughter. The custody was not to be exclusive in either case, however, each party being accorded the right to visit at all times the child awarded to the custody of the other, and each being enjoined from interposing "any obstacle or hindrance in the way of the other." On May 15, 1911, the relator removed from Nebraska

to Fergus county, Montana, where he has since resided. He brought with him the son, who has since remained with him. On November 3, 1911, Mary Nipp filed in the district court of Douglas county, Nebraska, a petition reciting the decree of April 8, 1911, and alleging that in contempt of the express order of the court and in violation thereof, the relator had concealed from her both of said minor children and had removed them to Fergus county, Montana, where he was keeping them on a ranch in charge of his niece, Minnie Hagedorn, without any intention of returning them or either of them to the state of Nebraska. The petition prayed that the decree be so modified as to award to plaintiff the custody of both children. The relator filed his answer resisting the petition on the ground that, since the domicile of the relator had been changed to Montana, and hence that of the minor, Freddie, the court was without jurisdiction of the subject matter of the proceeding, *viz.,* the custody of said minor, and that Mary Nipp, the plaintiff, was not a fit and proper person to have such custody, for the reason that she was addicted to the excessive use of morphine and other drugs. The court, after a hearing, modified the decree in accordance with the prayer of the petition and awarded the custody of both children to the plaintiff, with the proviso, however, that the relator might visit them alone at reasonable times at the home of plaintiff or at a place designated by her, but only in the presence of a representative of the plaintiff who should be able to protect the children and plaintiff's rights. There is in the record no statement as to what was thereafter done with the daughter, Emilie. Since her custody is not now in question, it may be assumed that after the decree was modified she was returned to Nebraska to her mother and is now in her custody. The *habeas corpus* proceeding was instituted in the district court of Fergus county on August 12, 1912. The petition recited somewhat meagerly the proceedings had in the Nebraska court resulting in the modified decree. It alleged that the son had been removed from the state of Nebraska by the relator, in violation of the decree as modified, and prayed that he be awarded to the custody of petitioner under the modified decree. The relator

moved the court to set aside the writ for insufficiency of facts alleged in the petition, and also demurred to the petition on the same ground.  The motion and demurrer were overruled.  He then made his return.  He admitted that the proceedings set forth above had been had in the Nebraska court and that he had removed the son to Montana soon after the decree of divorce had been rendered.  He then alleged generally, by way of conclusion, that the petitioner is not a fit person to have the custody of the son because she is addicted to the excessive use of morphine and is without means to provide a suitable home for him, whereas he himself is able to furnish him the care and attention which his age and condition require.  The court, on motion of counsel for petitioner, struck out these allegations.  Thereafter it sustained a demurrer to the return and made the order awarding the custody to petitioner.

The questions presented for decision arise upon a motion submitted by counsel for respondents, asking that the order to show cause be set aside and the proceedings dismissed, on the general ground that the facts stated in the petition do not warrant the relief demanded.  We shall notice them as they are discussed in the brief of counsel for relator.

It is earnestly argued that when an infant is brought into [1] court in obedience to a writ of *habeas corpus,* it is thenceforward in the custody of the court, subject to its disposition; that the power of disposition rests upon the broad foundation of the general jurisdiction of courts over infants, and that it is not limited by any previous order of any court as to the custody; and that the court, in striking from relator's return to the writ the allegations as to the fitness and ability of the petitioner to have the custody and to hear evidence in support of them, committed a fundamental error.  This contention proceeds upon the assumption that, since the original decree of the Nebraska court awarded the custody of his son to the relator and did not in terms prohibit him from removing the son to Montana, he was at liberty to establish his own domicile in Montana, and thus that of the son, and, having done so, it was incumbent upon the district court to determine the question of custody without refer-

ence to the amendment made to the decree by the Nebraska court. Counsel for the respondents, conceding that the statute makes the best interests of the minor the paramount consideration (Rev. Codes, sec. 3783), invoke the benefit of the clause of the federal Constitution which declares that full faith and credit shall be given in each state to the judicial proceedings of every other state (U. S. Const., Art. IV, sec. 1), and insist that the amended decree concludes the rights of the parties, and that unless there has been a change in the fitness or condition of the mother since the amendment was made, the custody was properly awarded to her under the Nebraska decree.

There is some conflict in the decisions upon the subject. In the case of *In re Bort*, 25 Kan. 308, 37 Am. Rep. 255, it was held, in a similar case, that while the decree was conclusive as between the parents, the best interest of the minor child is the paramount consideration. The court accordingly refused to give the decree of divorce the force of an estoppel or even to consider it as a fact or circumstance which ought to influence its discretion. On the other hand, in *People ex rel. Allen* v. *Allen*, 47 N. Y. Sup. Ct. 612, 40 Hun, 612, the court refused to follow the rule announced in this case, and held that a decree of a circuit court of Illinois, granting the mother a divorce and awarding to her the custody of her minor children, was conclusive upon the rights of the parents and binding upon the children for the time being, but that "as soon as the circumstances of the custodian changed or other circumstances arose which would make it for the best interests of the children that there should be a change, it would be the duty of the court in which the decree was originally made, or any other court having jurisdiction, to make such change." The court awarded the custody of the children to the mother. The court of appeals (*People ex rel. Allen* v. *Allen*, 105 N. Y. 628, 11 N. E. 143) approved this holding, remarking that it "gave to the Illinois decree not the force of an estoppel, * * * but simply regarded it as a fact or circumstance bearing upon the discretion to be exercised, without dictating or controlling it." The result of this case is that, in the absence of allegation and proof of the circumstances

of the custodian subsequent to the date of the decree, the court will accept the decree as binding as to the children as well as to the parents.

In the case of *Wakefield* v. *Ives,* 35 Iowa, 238, in a controversy over the custody of a child between the father and mother, who had been divorced by a decree of a court in Minnesota which awarded the custody of the minor to the mother, it was held that in the absence of a showing as to the circumstances under which the minor was brought into the state of Iowa, the decree of the Minnesota court should be accepted as conclusive until modified, reversed or set aside for cause shown to the jurisdiction which rendered it. This, in effect, is an approval of the rule announced by the New York court, for it is apparent that the Iowa court would have reached a different conclusion if facts had been shown indicating a change in the character or condition of the custodian subsequent to the rendition of the original decree.

In *Wilkinson* v. *Deming,* 80 Ill. 342, 22 Am. Rep. 192, the question was whether the divorced wife to whom the custody of a minor child had been awarded could by will appoint a guardian, the father being still alive. The court held that the decree *ipso facto* took away all control of the father over the child until it should be restored to him by action of the proper court. The same conclusion is announced in the following cases: *Stetson* v. *Stetson,* 80 Me. 483, 15 Atl. 60; *Hammond* v. *Hammond,* 90 Ga. 527, 16 S. E. 265; *Hanrahan* v. *Sears,* 72 N. H. 71, 54 Atl. 702; see, also, Church on Habeas Corpus, 2d ed., sec. 82; 2 Nelson on Divorce and Separation, sec. 980.

This court recognized the principle of these decisions in *State ex rel. Giroux* v. *Giroux,* 19 Mont. 149, 47 Pac. 798, where the issue was whether the father, to whom had been awarded the custody of a minor child by a decree of a district court of the territory of Arizona, had a superior right to the mother. The father predicated his claim upon the decree alone. Under this condition this court held the decree binding, but at the close of the opinion said: "We do not wish to be understood as holding that this decree of divorce awarding the custody of the child to

the father was of itself absolutely binding upon the lower. court. Had proof been introduced showing that the father, since the decree, had become an unfit person for the custody of the boy, and that, as between the two parents, for the child's protection, it would have been better to award the custody to the mother, the conditions would have been different." Thus, while recognizing the paramount importance of the interest of the minor child, the court accepted the decree of the Arizona court as conclusive in the absence of proof indicating a change in the fitness of the custodian selected by it, or in the circumstances affecting the condition of the boy, subsequent to its rendition. We think this holding in accord with the provision of the federal Constitution, *supra*, as interpreted by the Act of Congress passed to give it effect, which declares that the "said records and judicial proceedings authenticated as aforesaid, shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the state from whence the said records are or shall be taken." (U. S. Comp. Stats. 1901, sec. 905; U. S. Rev. Stats., sec. 905.) This must be the result; otherwise the court of the state in which a controversy should arise subsequent to the date of the decree would sit as a court of review of the action of a court of a sister state having the same jurisdiction, thus according neither faith nor credit to its findings as to the fitness of the custodian selected by it. At the same time the restriction does not interfere with the exclusive right which the courts of each state have to determine the *status* of persons found within their jurisdiction without control or restriction by the laws of a sister state. (*Woodworth* v. *Spring,* 86 Mass. 321.) The allegations stricken from the return of relator tendered issues only as to matters affecting the fitness of the mother at the time the decree was rendered. We think the district court properly held that these matters had been concluded by the decree, and hence did not err in striking them out.

It is contended that even though the allegations were properly stricken from the return, the court should have disregarded the decree and disposed of the application as if it had not been

rendered.   In this connection it is said that the relator was free
to establish his domicile in Montana if he chose to do so; that hav-
ing done so, he thereby established the domicile of his son here,
also, there being nothing in the original decree prohibiting him
from bringing his son here, and that since the decree was amended
nearly fourteen months thereafter, the order of the district court
amounted to a denial to the son of the protection of the laws of
this state.   There is no merit in this contention.   Under the
[2]   terms of the decree the relator could not lawfully remove
the son from the jurisdiction of Nebraska.   It required that he
should not put any obstacle or hindrance in the way of the visi-
tation of the son by the mother.   This was tantamount to a direc-
tion to him to keep the son within the jurisdiction of the court
whose ward he then was.   (*Campbell* v. *Campbell,* 37 Wis. 206.)
Yet almost immediately after its rendition he removed the son
to this state, thus practically taking away the right of visitation
by the mother.   It may be that since the prohibition of removal
was only implied and not express, the relator was not guilty of
a contempt; nevertheless the right was a substantial one and
the relator was bound to respect it until this feature of the
[3]   decree had been amended or set aside.   Notwithstanding
the removal, the Nebraska court retained its jurisdiction, and it
was competent for it to so amend the decree that the mother
could enforce the right thereby accorded to her.   (*Morrill* v.
*Morrill,* 83 Conn. 479, 77 Atl. 1; *Hammond* v. *Hammond, supra;*
*Wakefield* v. *Ives, supra; Stetson* v. *Stetson, supra; Baily* v.
*Schrader,* 34 Ind. 260; *State* v. *Rhoades,* 29 Wash. 61, 69 Pac.
389.)   And, as has already been said, in the absence of a show-
ing of circumstances occurring since the amendment requiring
the court of this state, in the interest of the son, to order other-
wise, this part of the decree is to be enforced together with its
other provisions, the effect to be given the record in this state
being the same as that which is given to it in the state from
which it came.   (Rev. Codes, sec. 7919.)

The relator contends that the petition is fatally defective, in
[4]   that it neither alleges the facts showing the jurisdiction of
the Nebraska court, nor that the decree was duly given or made.

It is true, as has already been said, that the petition is not specific in its allegations, but we think it alleges enough to show that the court which rendered the decree is one of record of general jurisdiction. This is sufficient. (23 Cyc. 1567.) But conceding that the demurrer should have been sustained, there was before the court during the hearing, the records of all the proceedings of the Nebraska court which resulted in the amended **[5]** decree. The decision was based upon the merits. No fundamental right of the relator or the son was violated. Under these circumstances we do not feel disposed to set aside the action of the court for mere technical error not affecting the **[6]** merits. The purpose of this proceeding is not to correct mere error within jurisdiction, except in so far as this is necessary in order to prevent irreparable injury to a litigant resulting from arbitrary or oppressive action by an inferior court. (*State ex rel. Whiteside* v. *District Court,* 24 Mont. 539, 63 Pac. 395; *State ex rel. Sutton* v. *District Court,* 27 Mont. 128, 69 Pac. 988; *State ex rel. Heinze* v. *District Court,* 32 Mont. 579, 81 Pac. 345.)

The motion to quash the order to show cause is sustained and the proceeding is dismissed.

*Dismissed.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.