## WEISS v. FITE.

*Divorce—Custody decree inoperative upon rights of child—Decree inoperative after death of party thereto—Habeas corpus for custody of child—Court may consider child's interests and award custody accordingly.*

1. The decree of a court in a divorce case awarding the custody of children is conclusive only of the rights of the parties thereto and not of the rights of the children.

2. The decree of a court in a divorce case awarding the custody of the children ceases to operate upon the death of one of the parties. After such death the surviving parent's right to custody proceeds from natural law and not from the court's decree.

3. When a writ of *habeas corpus* is resorted to for the custody of children, and it appears that such children are not under any physical restraint, the court is bound to ascertain what custody is best for the children and award their custody accordingly.

(Decided November 25, 1924.)

ERROR: Court of Appeals for Adams county.

*Mr. C. E. Robuck*, for plaintiff in error.
*Mr. F. A. Shiveley* and *Mr. W. R. Mahaffey*, for defendant in error.

MAUCK, J. Edna L. Weiss brought an action in the Court of Common Pleas in *habeas corpus* on January 28, 1924, alleging that she was the mother of three minor children then under the illegal restraint of John C. Fite. The respondent an-

[1] Divorce, 19 C. J. § 808; [2] Id., 19 C. J. § 807; [3] Habeas Corpus, 29 C. J. § 106 (Anno.).

swered that he was the grandfather of the children; that they were the children of Walter Fite, and were in the custody of Walter Fite in the state of California at the time he was killed on the tenth day of November, 1923; that this respondent was at that time visiting in California; that the sudden death of their father left the children without any proper home and that the respondent brought them to respondent's home in Adams county, Ohio, where he has provided them with a home and will continue so to do; and that he is by appointment of the Probate Court of Adams county, Ohio, the guardian of the children. He further charged that the relatrix does not have a proper home for the children.

Trial was had and decree entered dismissing the petition, and to that judgment error is prosecuted to this court.

The evidence shows that a divorce was obtained by the mother of these children from their father in the Superior Court of Kings county, Washington, January 7, 1916, and that the court in the decree awarded the custody of the children to the father, the court expressly retaining the permanent custody and control of the children and expressly prohibiting their removal from that county. This decree was altered from time to time, both as to the party who should have custody of the children and as to the children going temporarily and for fixed periods out of the state of Washington. In February, 1920, a consent entry was made permitting the father to take one of the children to visit with him in California for six months. In August, 1920, an extension was

granted of this order to July, 1921. On April 18, 1922, the court found that the mother had remarried, that her second husband was not supporting the children, that the mother could not do so, and thereupon ordered:

"That the defendant (the father) be and he is hereby granted permission to take the said three minor children of the parties hereto, Doris Ruby McLane, Clifford Melvin McLane and Kenneth Walter McLane, to California with him and to keep them in his care and custody and control until the further order of the court."

On January 17, 1924, the same court, finding that the father was dead, ordered that the children be awarded to the mother. The children were at this time in Ohio.

In the case at bar the trial court found that it was for the best interests of the children that they remain with the respondent, and it becomes necessary, therefore, to ascertain whether that court in *habeas corpus* proceedings could inquire into the children's welfare, or whether, on the other hand, either the decree of the Washington court or the natural right of the mother to custody is such that in a proceeding of this character it must be given effect without regard either to the children's best interests or their wishes. The rule that in divorce cases the court has jurisdiction to award the custody of the children, and that this jurisdiction is continuing, can not be questioned. Such a decree, however, is conclusive in a limited way only. In *Milner* v. *Gatlin*, 139 Ga., 109, 76 S. E., 860, the Supreme Court of Georgia holds:

"A decree of divorce in another state in which

the custody of the child is awarded to the father, is conclusive as between the parties to the decree as to his right and fitness for such custody at that time, but is not conclusive for all time. In a subsequent proceeding by *habeas corpus* for the possession of the child between the parties to the decree, evidence as to the unfitness of the father will be confined to matters transpiring subsequently to the decree."

In Montana it was held that the full faith and credit rule required that a decree of divorce awarding the custody of the children, rendered in a sister state, should be deemed conclusive "in the absence of proof of a change in the fitness of the custodian or the circumstances affecting the condition of the children subsequent to the rendition of the judgment." *State, ex rel. Nipp,* v. *District Court,* 46 Mont., 425, Ann. Cases 1916B, 256.

In *People, ex rel. Allen,* v. *Allen,* 40 Hun, 611, affirmed in 105 N. Y., 628, 11 N. E., 143, it was held that the judgment of an Illinois court in a divorce case was conclusive as to the custody of the children as of the time when rendered so far as the parties thereto were concerned, but that "the decision was binding upon the children only for the time being, and that as soon as the circumstances of the custodian changed, or other circumstances arose which would make it for the best interests of the children that there should be a change, it would be the duty of the court in which the decree was originally made, or of any other court having jurisdiction, to make such change."

The authorities quoted, and others cited therein, sustain the doctrine that an award made in a

divorce case is conclusive only as to the facts at the time the decree is made, and only as to the parties thereto.

It is true that the proceeding, so far as it involves the children, is in the nature of a proceeding *in rem,* the children constituting the *res* in action. The children are not property, however, nor subject to such disposal as property coming under the jurisdiction of the court. No right in or title to them can be acquired contrary to their own vital interests. As the decree of the Washington court could only operate *inter partes* it ceased to operate at all upon the death of the father, who had the temporary custody of the children at the time of his death. Of such situation the Supreme Court of Massachusetts, in *Stone* v. *Duffy,* (219 Mass., 178), 106 N. E., 595, has held:

"Where, upon divorce, the decree awards the custody of a minor child of the marriage, the death of one parent terminates the right of the other to custody under the decree, and the only rights of such parent thereafter are those of a surviving parent."

In *Clarke* v. *Lyon,* 82 Neb., 625, 118 N. W., 472, the Supreme Court of Nebraska was dealing with a case in which the mother had been awarded the custody of the children. Upon her death the divorced husband brought his action in *habeas corpus* for their possession. If the judgment rendered in the divorce case was operative after the death of the mother we take it that *habeas corpus* would not have been an available remedy, and that the father would have had to apply to the court that originally awarded the custody. His

writ of *habeas corpus* was denied, the court hold-ing, however, that a divorce decree awarding minor children to the mother and finding that the father was unfit to be given their custody is temporary in its nature and does not prevent his obtaining their custody and control after the mother's death.

We accordingly conclude in this case that the decree entered in the Washington court on January 17, 1924, was ineffective; that after the death of the father, November 10, 1923, the court had no jurisdiction in that case to bind anyone by any further decree. The mother, however, upon the death of the father, became *prima facie* entitled to the custody of the children as a common-law right and must be heard in Ohio courts in assertion of these rights.

The real question then is whether a court in this state can deny a mother, resident in Washing-ton, a writ of *habeas corpus* for the possession of her minor children when the court is convinced that the best interests of her children, as well as the children's wishes, will be best satisfied by denying the writ. The plaintiff in error has point-ed out the lack of any statute conferring such authority. In our view no statute is required to vest courts having the power to issue the writ with power to inquire into the needs of the children. It is not necessary to go so far as the Supreme Court of Washington has gone in so sustaining the power of the court in the exercise of its dis-cretion in issuing the writ.

In *Kentzler* v. *Kentzler*, (3 Wash., 166), 28 Pac., 370, it was held:

"On *habeas corpus* by the mother to obtain

possession from the father of two children aged four and six years, whose custody she alleged had been awarded her in divorce proceedings in another state, it appeared that the mother was without property, and had no means of support save her personal earnings of $15 per month, was in poor health, and lived with her mother, in immoral surroundings, and that the father was an industrious and sober man, earning $100 per month. *Held,* that the welfare of the children was the only thing to be considered, and a judgment awarding their custody to the mother should be reversed."

In that case the court found the Montana decree to have been improperly proven, but did not order a new trial, entering judgment for the father upon its finding that the best interests of the children required it. The Washington court accordingly held that the interests of the children were paramount to a decree in Montana, if it should prove that there was such a decree.

The most interesting and learned exposition of the law of *habeas corpus* as applied to children is probably that of Judge Betts of the federal Circuit Court, printed at the instance of the Supreme Court in 136 U. S., 597. Without retracing the growth of the law of *habeas corpus,* as is done in that opinion, it is sufficient to point out that the original office of the writ was to afford relief to one under actual physical restraint. Its use to determine the custody of children is an outgrowth of that original right. In the case of the custody of children the writ of *habeas corpus* is issued by the sovereign only because the sovereign as *parens patriae* is

paramount to the natural parents. Quoting Judge Betts, at page 604:

"The cases before cited show that the English and American courts act in this behalf solely upon the assertion of the right of the sovereign whose power they administer, to continue or change the custody of the child at his discretion, as *parens patriae,* allowing the infant, if of competent age, to elect for himself; if not, making the election for him."

And again, at page 626:

"I apprehend it has been sufficiently shown that neither in England, before our Revolution, nor in this state since, has judgment been rendered under a *habeas corpus* in regard to infants, on the acceptation that the right of the father to their custody was anything in the nature of property, or so fixed in law as to afford a controlling rule of decision to the court. In the use of the remedy afforded by means of this writ, the courts have regarded the father as that guardian first to be looked to, in case a change of custody should be deemed proper, and the infant was not of competent age to make its own choice of guardian; but it has been purely in the application of the remedy and for the protection and interest of the infant, and not in subordination to the legal right of the father, that such award is ever made."

In such proceedings, says Bailey on Habeas Corpus, Section 149:

"The question is always present and open to inquiry as to the fitness of the parties to have the custody of the child, and the inquiry extends not only to the ability to properly maintain and care

for it, but also to the habits and character of the parties.   *   *   *   In other words, where these elements exist then the court is called upon to exercise its discretion without regard to the paramount rights at law of either, and dispose of the custody of the child as its best interests seem to demand."

And, further, in Section 148:

"The party applying for a writ must affirmatively show that he is entitled to the custody of the child, whether it be a parent, individual, or a corporation organized for charitable purposes; and the order of the court will be, unless the child has been legally bound or legally committed to the care and custody of another or of some institution, either penal, reformatory or charitable, if of the age of discretion, that he be freed from the restraint alleged, if found to exist, and, if not of the age of discretion, then assigned by the court to the lawful or a proper custodian, according as the facts may warrant."

"The ascertainment and enforcement of the custody of minor children by the use of the writ of *habeas corpus* is of an equitable nature, and in such cases the question of personal freedom is not involved, for an infant, from humane and obvious reasons, is presumed to be in the custody of someone until it has attained its majority; and the court, when asked to restore an infant, is not bound by any mere legal right of parent or guardian, but is to give it due weight as a claim founded on human nature, and generally equitable and just." 12 Ruling Case Law, 1215.

See also 2 Nelson on Divorce, Section 980, and

2 Schouler on Marriage, Divorce, Separation and Domestic Relations, Section 1897.

When the jurisdiction of the trial court in *habeas corpus* was invoked in this case and it developed that the children were not physically restrained, but that so far as they could express themselves they were willing and anxious to abide with their grandparents, it was within both the power and duty of the court to ascertain what was best for the children. This the court did. With his conclusions upon the facts we are in full accord.

It follows that the judgment ought to be and is affirmed.

*Judgment affirmed.*

MIDDLETON, P. J., and SAYRE, J., concur.