(No. 5030. July 18, 1928.)

HANORA DURYEA, Appellant, v. JOHN C. DURYEA and RICHARD KELLOGG, Respondents.

[269 Pac. 987.]

Delana & Delana and Barber & Barber, for Appellant.

Oppenheim & Lampert and E. O. Smith, for Respondents.

GIVENS, J.—Plaintiff-appellant seeks by *habeas corpus* to obtain from John C. Duryea the possession of their two minor children, Cleora Sarah and Thomas Alfred Duryea.

Early in 1921, appellant and Duryea, with the children, were residing at Coney Island, near Reno, Nevada. At that time, apparently, the parties had mutually resolved to remove the family home to Denver, but before this could be accomplished Duryea departed from Reno, taking the children with him, and finally arrived at Glenn's Ferry in this state where they have since remained.

In April, 1925, appellant, learning for the first time that the children had been brought into this state, came to Glenn's Ferry and attempted forcibly to remove them. Duryea resisted her efforts and while she remained at Glenn's Ferry instituted in the district court in this state a divorce action against her, and in such action an order was entered placing the children in the custody of Richard Kellogg at Glenn's Ferry pending its outcome.

Shortly thereafter, at the instigation of appellant, Duryea was arrested on a charge of wife desertion, and, over his opposition, extradited to Nevada. This criminal charge was later dismissed, but while Duryea was confined in a Reno jail he was served with process in a divorce action commenced in Nevada by appellant. That action for divorce and the custody of the children Duryea resisted, setting forth that the children were not within the jurisdiction of the Nevada courts. It should be borne in mind that the children at that time were in Idaho, within the jurisdiction of an Idaho court and actually in its custody.

The Nevada court granted appellant a divorce and awarded her the custody of the children. Duryea refused to surrender them, whereupon appellant commenced this action of *habeas corpus*, relying on the Nevada decree.

At the hearing the trial court received evidence bearing on the character and fitness of the respective parties and permitted this inquiry to range over a period of many years, much of it dealing with events prior to the Nevada

decree. This extensive delving into the past developed, among other things, that appellant had been a party to the case of *Peery v. Peery,* 27 Colo. App. 533, 150 Pac. 329. The opinion of the supreme court of Colorado in that case was admitted in evidence and appellant was cross-examined at length with regard to matters therein disclosed.

At the conclusion of the hearing, a decree was entered awarding the custody of the children to Duryea, specifying as a condition that they be kept at the home of Kellogg and be not moved from the jurisdiction of the court.

The appeal raises numerous questions of error, among them the question of the recognition to be accorded the judgment of the Nevada court.

Before a foreign judgment need be accorded recognition in a court of the forum, it must appear that the judgment was rendered by a court of competent jurisdiction. Questions of comity and the respect to be accorded foreign judgments do not arise where it appears that the court awarding judgment was without jurisdiction. (*Milner v. Gatlin,* 139 Ga. 109, 76 S. E. 860.) Such a judgment is a nullity and quite obviously cannot be enforced in another jurisdiction.

Questions relating to the respect to be accorded, extra-territorially, to decrees awarding custody of children have arisen chiefly in two classes of cases. In most instances the parents, or at least one of them, *and the children,* were before the court making the decree. In this class of cases some few courts have refused to be bound by a foreign decree, holding that as soon as the child comes within its jurisdiction, the question of its status becomes one for the local court to determine in the best interests of the child. (*In re Alderman,* 157 N. C. 507, 73 S. E. 126, 39 L. R. A., N. S., 988.)

The rule that may be denominated the majority rule, however, in this class of cases, recognizes the conclusiveness of the foreign decree and holds that it may be enforced extraterritorially, providing no change has taken place in the circumstances which would warrant a reopening of the

matter. This rule affords exactly the same recognition to a decree of a foreign court that would be accorded to an adjudication within the forum, for it is well established that a decree awarding custody may be modified or changed by the court making it as the circumstances may warrant.

The second class of cases involves facts similar to those in the case at bar, wherein an attempt has been made to decree the custody of children not within the jurisdiction of the court. In this class of cases it is almost uniformly held that such a decree need be accorded no extraterritorial recognition.

This holding is supported by principle as well as by authority. In all cases involving divorce and the custody of children, the court has before it for consideration a status, or more properly a double status. Minor, in his Conflict of Laws (1901), p. 208, says of a proceeding of this kind:

"Being nothing less than a determination of the guardianship of the children, it is a question of *double* status, relating no less to the status of the children than to that of the respective parents. The decree for the children's custody therefore is as much a decree *in rem* as is the divorce itself, but with a more extended *res*."

To the same effect is 2 Bishop on Marriage and Divorce, sec. 1189.

It is elementary that each state may determine the status of its own citizens. (*Milner v. Gatlin, supra.*) The law that governs the status of any individual is the law of his legal situs, that is, the law of his domicile. (Minor, *supra*, p. 131.) At least this jurisdictional fact—dominion over the legal situs—must be present before a court can presume to adjudicate a status, and in cases involving the custody of children, it is usually essential that their actual situs as well be within the jurisdiction of the court before its decree will be accorded extraterritorial recognition.

Says Minor, *supra*, p. 208, in discussing this question:

"Primarily and theoretically the courts of the father's domicile alone should have the power to decree the custody of the children to the mother so as to give the decree

any extraterritorial effect; for they alone have complete jurisdiction of the entire *res*—of the status of the father and children by reason of the domicile, and of the status of the mother (whether resident or not) by reason of the fact that her status as wife and mother is inseparable from that of her husband and children. Practically, however, the control of the courts of the husband's domicile is complete and perfect only when the *actual* as well as the *legal* situs of the infant children is within its territory. If the children are actually elsewhere, the court can exercise no real control over their custody, and it may even be doubted whether any extraterritorial effect should be accorded such a decree.''

Wharton on Conflict of Laws, 3d ed., p. 530, reaches a similar conclusion in regard to this question:

''When a court of one state which grants a divorce has personal jurisdiction of both husband and wife, it is clear that it has jurisdiction to award the custody of the minor children of the marriage, and its decree in this respect is entitled to recognition and effect in another state, at least if the children were within the former state at the time the decree was rendered. Their absence from that state will probably not affect the jurisdiction if the husband and father was domiciled therein, since they take his domicile; but their absence may, perhaps, defeat the jurisdiction in this respect, if the father, though personally subject to the jurisdiction, was domiciled elsewhere, since in that case there was neither actual residence nor domicile of the children in the state upon which to found jurisdiction with respect to their custody.''

One of the earliest cases in which this precise question arose was *Kline v. Kline*, 57 Iowa, 386, 42 Am. Rep. 47, 10 N. W. 825. A Wisconsin court granted a decree of divorce to a father and awarded him the custody of the children. Several years prior to the date of the decree the mother and children had moved to Iowa. In a *habeas corpus* proceeding in the Iowa courts, brought by the father to secure possession of the children, the supreme court of that state said:

"Under these circumstances, we think the better rule is that the court in Wisconsin had jurisdiction to declare the status of the parties before it and grant the divorce, but that the decree in excess of this was void for want of jurisdiction. Suppose that a husband should desert his wife and remove to another state, taking his property with him, and she should make her application for a divorce and alimony and make service by publication and take her decree without any appearance by the defendant—no one would claim that a money judgment for alimony could be enforced in such case in a foreign jurisdiction. And yet, in a certain sense, the court has jurisdiction of the defendant, but it is only for the purpose of changing the status of the complaining party and terminating the marriage.

"We think it logically follows that, where the minor children are non-residents of the State where the divorce proceedings are had, that the court acquires no jurisdiction as to their custody simply because the decree can have no extraterritorial force or effect. In Cooley's Constitutional Limitations, p. 404, it is said: 'The publication which is permitted by the statute is sufficient to justify a decree in these cases changing the status of the complaining party and thereby terminating the marriage and it might be sufficient also to empower the court to pass upon the question of the custody of the children of the marriage, if they were within the jurisdiction; if they acquire a domicile in another State or country, the judicial tribunals of that State or country would have the authority to determine the question of their guardianship there.' "

In *Brandon v. Brandon*, 154 Ga. 661, 115 S. E. 115, father and minor son resided in Georgia. The mother made her home in Ohio and there secured a divorce and a decree awarding her the custody of the child. The mother thereupon commenced *habeas corpus* proceedings in the Georgia court, asking for possession of the child. The court, denying the petition, said:

"This brings us to consider the effect of such a decree upon the right of the father to the custody of his minor

child when the child was not within the state whose court rendered the same at the time of its rendition but was with the father in this state at such time. If this child had been residing with the mother in Ohio at the time of the rendition in that state of the decree of divorce in favor of the mother upon constructive service, such decree might be binding and conclusive upon the father in this *habeas corpus* proceeding brought by the wife in this state to secure the custody of the child from the father. (Citing case.) It has been held that action for a divorce is a proceeding *in rem* so far as it affects the status of the parties and the custody of their minor children within the jurisdiction of the court, and that service by publication is good. (Citing case.) Where, however, the child was living with the father in this state at the time of the rendition of the decree of divorce, awarding the child's custody to the mother, the court was without jurisdiction to award the custody of the child to the mother, such decree being based upon service by publication alone on the father. (Citing cases.)"

In *Kenner v. Kenner*, 139 Tenn. 211, 201 S. W. 779, L. R. A. 1918E, 587, it appeared that the mother had separated from her husband residing in Tennessee, and had gone to Alabama with her child, where she had secured a divorce and the custody of the child. Thereafter the father filed a bill in the Tennessee courts asking that the Alabama decree be set aside and the custody of the child awarded to him. The court in denying his petition said:

"Where the child is within the local jurisdiction the court has the power to award its custody to the one parent or the other; when it is not within that jurisdiction, no such power exists."

To the same effect are the following cases: *Seeley v. Seeley*, 30 App. (D. C.), 191, 12 Ann. Cas. 1058; *De la Montanya v. De la Montanya*, 112 Cal. 101, 53 Am. St. 165, 44 Pac. 345; *Milner v. Gatlin*, 139 Ga. 109, 76 S. E. 860; *People v. Hickey*, 86 Ill. App. 20; *Mollring v. Mollring*, 184 Iowa, 464, 167 N. W. 524; *Rodgers v. Rodgers*,

56 Kan. 483, 43 Pac. 779; *Payton v. Payton,* 29 N. M. 618, 225 Pac. 576; *Lanning v. Gregory,* 100 Tex. 310, 123 Am. St. 809, 99 S. W. 542, 11 L. R. A., N. S., 690.

See, also, note to *De la Montanya v. De la Montanya, supra,* 53 Am. St. 165, 185; note to *Seeley v. Seeley, supra,* 12 Am. & Eng. Ann. Cas. 1059; note to *Geary v. Geary* (Neb.), in 20 A. L. R. 809, 818.

But it may be urged that a decree in a foreign state, though not binding on nonresident children, is binding on the parents if they appear and subject themselves to its jurisdiction. Such a contention ignores the nature of status and particularly of status as applied to infant children. "The status of an individual, used in a legal sense, is the legal relation in which that individual stands to the rest of the community." (*Niboyet v. Niboyet,* 4 Prob. Div. (Eng.) 11, quoted in Minor, *supra,* p. 131.)

But one question remains for determination and that is the question of domicile. If the law of the status depends on the law of the domicile, or legal situs, it becomes of importance in cases of this kind to fix the domicile of the children.

It is undisputed that at the time the Nevada court made its decree the children, whose custody it purported to award, were physically present in Idaho and actually in the custody of the trial court. It is equally patent that their legal situs, also, was in this state. At common law the domicile of minor children followed that of their father. It is true that C. S., sec. 4681, grants equal rights to both parents in the matter of their custody. But the father has the right to fix the domicile. (C. S., sec. 4655; *People v. Brooks,* 35 Barb. (N. Y.) 85; *Brandon v. Brandon, supra;* see note to *Glass v. Glass* (Mass.), 53 A. L. R. 1157.)

It is hardly necessary to add that the domicile of the father was in Idaho. His physical presence in Nevada, in response to legal process and against his will, could not affect the domicile of his choice in this state.

The domicile of the children being in this state at the time of the Nevada decree, that decree, in so far as it pur-

ports to determine the question of custody, is a nullity and is not entitled to extraterritorial recognition.

■■ The Nevada decree, being entitled to no recognition in this state, the question of the children's custody remained an open one. It was therefore proper for the court below to inquire extensively into the history and character of both of the parents. The admission in evidence of the decision in the Peery case, in view of appellant's testimony relative thereto on cross-examination, was not prejudicial error.

The decree awarding the custody of the children to respondent Duryea is affirmed, each party to pay his and her own costs.

Wm. E. Lee, C. J., and Taylor, J., concur.

T. BAILEY LEE, J., Dissenting.—It is axiomatic that each state has the exclusive right to determine the status of persons found within its jurisdiction and is not bound in relation thereto by the laws or court decisions of other states. This right is in no respect affected by the full faith and credit clause of the national constitution. For this reason, it has been held times without number that a decree of a sister state awarding the custody of minors will not preclude a state within which they may later be found from making such disposition of them as their welfare may demand. The theory is that the interest of the child is paramount to the rights of the parents, and that, while the original adjudication of such rights may be *res adjudicata* as to the parents, the interest of the child is always open to further inquiry and determination. As to the rights of the parents, the general rule is that, when such rights have been declared by a court having jurisdiction of both parties, neither that court nor the court of a sister state will disturb the adjudication, unless there shall have subsequently arisen a change of conditions and circumstances affecting the welfare of the minor. The rule has been announced by our own court in *Stewart v. Stewart*, 32 Ida. 180, 180 Pac. 165,

where voluminous authorities are cited. In the absence of fraud or want of jurisdiction, where a decree of divorce in one state awards the custody of the child to one of the parties, the other may lawfully obtain possession of the child in another state *only* upon grounds which arose since that decree. Typical of the great majority of cases supporting this rule are: *Ex parte Wenman,* 33 Cal. App. 592, 165 Pac. 1024; *State v. District Court,* 46 Mont. 425, Ann. Cas. 1916B, 256, 128 Pac. 590; *State v. Giroux,* 19 Mont. 149, 47 Pac. 798; *Mylius v. Cargill,* 19 N. M. 278, Ann. Cas. 1916B, 941, 142 Pac. 918, L. R. A. 1915B, 154; *Wilson v. Elliott,* 96 Tex. 472, 97 Am. St. 928, 73 S. W. 946, 75 S. W. 368; *Milner v. Gatlin,* 139 Ga. 109, 76 S. E. 860; *Dixon v. Dixon,* 76 N. J. Eq. 346, 74 Atl. 995; *Haynie v. Hidgins,* 122 Miss. 838, 85 So. 99; *Kenner v. Kenner,* 139 Tenn. 211, 201 S. W. 779, L. R. A. 1918E, 587; *Allen v. Allen,* 40 Hun (N. Y.), 611—all holding that as between the parties to the original action or proceeding, they are bound by the matters adjudged and determined in that action or proceeding, and cannot again retry the questions therein determined. To hold otherwise would be to say that a pair of contentious spouses, after the adjudication of their rights in one state, could, without any change of conditions affecting their fitness, successively litigate the same matter through the remaining forty-seven states of the Union, alternately spiriting the minors from pillar to post for the purpose of rewashing old linen. And, as was aptly said in *State v. District Court, supra,* the result would be that "the court of the state in which a controversy should arise subsequent to the date of the decree would sit as a court of review of the action of a court of a sister state having the same jurisdiction, thus according neither faith nor credit to its findings as to the fitness of the custodian selected by it."

An exhaustive brief on the subject will be found in the note supporting *Geary v. Geary* (Neb.), 20 A. L. R. 809.

It is objected that the decree of the Nevada court could not preclude the Idaho court from inquiring into what was the best interests of the minors, since the court had never

acquired jurisdiction of their persons after the initiation of their residence in this state. The same objection could have been raised, even had the children actually been before the Nevada tribunal, for, as has already been said, each state has the exclusive right to determine the status of its residents and the former decree of a sister state respecting the custody of children has no extraterritorial effect. But, it must be remembered that this general rule does not apply to a contest between parties whose rights have been determined and where no new circumstances have developed warranting a reversal of the award in favor of the adverse party. The objection indirectly intimates that the order of the Nevada court respecting the children was a nullity, since that court had no jurisdiction of them. Counsel cite *Seeley v. Seeley,* 30 App. D. C. 191, 12 Ann. Cas. 1058; *Payton v. Payton,* 29 N. M. 618, 225 Pac. 576, and *Anthony v. Tarpley,* 45 Cal. App. 72, 187 Pac. 779. The Seeley case merely laid down the general rule. It did not suggest what would have been the outcome, if, at the hearing below, there had been a failure to show changed conditions. This case was decided in 1907. Twice since the same court in *Heavrin v. Spicer,* 49 App. D. C. 337, 265 Fed. 977, decided in 1920, and *Church v. Church,* 50 App. D. C. 237, 270 Fed. 359, decided in 1921, has held that a decree of a state court in divorce proceedings awarding the custody of a child is *res adjudicata* as to all matters which were or might have been decided in that case between the parties, and that the adverse party, in seeking to regain the custody of the child, can rely only on grounds which arose since the decision in the divorce case. *Payton v. Payton,* while expressly declaring that a state has no legal control or interest in the children of another state, directly recognizes the power of the courts of such former state to adjudicate the rights of the parents with relation thereto, when both parties are before the court. *Anthony v. Tarpley* would seem to be in point, yet it makes no reference to *Ex parte Wenman, supra,* and cites as authority on the "precise question," *Wilson v. Elliott, supra,* which expressly requires a change in cir-

cumstances before a re-examination of the right to custody. On the other hand, it would seem fairly well established that where the parents go into a court of general jurisdiction, the children residing in another state, the court has jurisdiction, as between them, to award the custody. While it is true that parents have no property right in children, they do have equitable rights as between themselves, growing out of and incident to the marital status; and the court in dealing with this status has power to fix their respective rights thereunder. As was said in *Anderson v. Anderson,* 74 W. Va. 124, 81 S. E. 706:

"That the children may not have been within the jurisdiction of the court at the time of the institution of the suit or entry of the decree is immaterial, since the parties litigant were the father and mother, and the cause of action, the right of custody, in so far as it affected the children, was between them, and the court had full jurisdiction over them with power to render a personal decree."

To the same effect are *State v. Hall* (Mo.), 257 S. W. 1047; *State v. Rhoades,* 29 Wash. 61, 69 Pac. 389; *Payton v. Payton, supra; Power v. Power,* 65 N. J. Eq. 93, 55 Atl. 111.

I am therefore of the opinion that the decree of the Nevada court was an adjudication of the respective rights of the instant parties at the time, and that the trial court, without a showing of changed conditions, had no authority to re-examine the issue of either party's fitness. The Nevada court found that petitioner was a fit and proper person to have the care, custody and control of the children. Not a word in the record evidences a deterioration in that respect, since all the adverse evidence adduced was restricted to conditions prior to the entry of the divorce decree. It was error to re-examine identical issues already determined between the parties.

The judgment should be reversed, with instructions to the trial court to enter a judgment in petitioner's favor.

Justice Budge authorizes me to say that he concurs in the views expressed.

Petition for rehearing denied.